HOMESTAKE EXPLORATION CORPORATION, APPEL-
LANT, *v.* SCHOREGGE, COUNTY TREASURER, ET AL., RE-
SPONDENTS.

(No. 6,220.)

(Submitted November 30, 1927.   Decided February 28, 1928.)

[264 Pac. 388.]

*Oil and Gas Leases—Net Proceeds Tax on Royalty Oil Pay-*
*able, by Whom—Ownership of Oil While in Ground—Rights*
*of Leases—"Royalty"—"Overriding Royalty"—Definitions.*

Oil and Gas—Ownership While in Ground—Leases—Nature of Rights of
Lessee.
1.  So long as petroleum and gas remain in the ground they are
part of the land and belong to its owner while they remain
there; and where he grants an oil and gas lease he does not
convey the oil and gas in place or any interest therein, but the
lessee is vested with a present property right in the premises,
i. e., to search for oil and gas and to appropriate them as per-
sonal property if found, yielding the stipulated royalty; his right
is to take a profit from the lessor's land.

Same—Contract to Explore Land a Lease, not Option.
2.  A contract under which a land owner grants to another the
right to search for oil and gas in the land is a lease, not a
mere option.

Same—"Royalty"—"Overriding Royalty"—Definitions.
3.  The term "royalty" as understood in oil operations is the
share of the product or profit paid by the lessee to the owner
of the land as consideration for the privilege of producing the
oil; while an "overriding royalty," usually provided for as a
reservation in an assignment of a lease, is a given percentage
of the gross production payable to some person other than the
lessor or persons claiming under him.  The owner of such a
royalty has an interest in the lease which cannot be transferred
or surrendered except with the same formalities necessary for
a transfer of the lease, and the provision therefor is binding upon
subsequent assignees of the lease, except innocent purchasers.

Same—Leases—Royalty Oil—When Lessee Liable for Payment of Net
Proceeds Tax.
4.  Where under the terms of a lease all the oil or gas found
in the land is granted to the lessee on condition that he yield
to the lessor a certain share of the oil produced as royalty or
rental, complete title in all of the oil produced vests in the
lessee upon its recovery; he is the owner of all of it, though
required to turn over a portion of it to the lessor as rental,
and liable for the net proceeds tax on all of it without deduction

---

1.  Oil and gas as part of realty, see note in 25 A. L. R. 225.   See,
also, 20 Cal. Jur. 359; 25 L. R. A. 225; 18 R. C. L. 1206, 1210.

for the oil turned over as royalty oil or its equivalent in money; the same rule being applicable where the lessee operates under an assignment of a lease providing for an overriding royalty, which amounts to no more than an additional rental to be paid by the operator.

Same—Leases—When Lessor Liable for Payment of Net Proceeds Tax on Royalty Oil.

5. Under an oil and gas lease whereby the lessor retained ownership of a specified per cent of the oil to be produced by the lessee and the latter was required to deliver to the lessor the per cent of oil reserved or its equivalent in money, title and ownership of such reserved portion are in the lessor, and he, and not the lessee, is liable for the net proceeds tax on such portion, since a tax may not be legally levied against a person for property he does not own.

Same—Divisible Interests in Oil Well—Net Proceeds Tax Assessable to Each Owner.

6. Where several persons own separate divisible interests in a mine (or oil well) the interest of each is properly taxable to each under the statute providing for taxation of net proceeds of mines. (Distinguishing instant case from *Northern Pac. Ry. Co.* v. *Musselshell County,* 74 Mont. 81, containing language intimating that statute contemplates assessment to but one person.)

---

[1]  Mines and Minerals, 40 C. J., sec. 442, p. 904, n. 81; sec. 676, p. 1059, n. 16.
[2]  Mines and Minerals, 40 C. J., sec. 584, p. 991, n. 89.
[3]  Mines and Minerals, 40 C. J., sec. 632, p. 1027, n. 43; sec. 729, p. 1103, n. 36; sec. 747, p. 1115, n. 34; sec. 752, p. 1120, n. 94.
[4]  Mines and Minerals, 40 C. J., sec. 676, p. 1060, n. 18; sec. 677, p. 1061, n. 29; sec. 732, p. 1104, n. 71. Taxation, 37 Cyc., p. 776, n. 73.
[5]  Taxation, 37 Cyc., p. 776, n. 74.
[6]  Taxation, 37 Cyc., p. 1008, n. 22.

*Appeal from District Court, Toole County; John J. Greene, Judge.*

ACTION by the Homestake Exploration Corporation against W. H. Schoregge, as County Treasurer of the County of Toole, and another. Judgment for defendants and plaintiff appeals. Reversed and remanded.

*Messrs. Campbell & Toole* and *Messrs. Smith & Eickemeyer,* for Appellant, submitted an original and a supplemental brief; *Mr. Donald Campbell* and *Mr. Sam D. Goza, Jr.,* argued the cause orally; *Mr. E. G. Toomey,* of Counsel.

This court held in *Mid-Northern Oil Co.* v. *Walker,* 65 Mont. 414, 211 Pac. 353, that oil is a mineral and an oil well is a

mine. Therefore, taxation of oil wells for the purpose of this case, which arose in 1926, is governed by sec. 3 of Article XII of the Constitution of this State, and by sections 2088 to 2096, inclusive, Revised Codes of 1921, as amended by Chapter 191 of the Session Laws of 1925. The question for determination is: Is the value of the royalty oil assessable as net proceeds to the operator or lessee?

There are two kinds of royalty involved; one, the land owner's royalty, the other the so-called "overriding royalty." However, we think any distinction between the two classes of royalties for the purpose of this case is immaterial, and that in substance the two royalty interests so far as their liability for tax is concerned, are identical.

The word "royalty" has a very well understood and definite meaning in mining and oil operations. As thus used, it means a share of the products or profit paid to the owner of the property. (Webster's Dictionary; *Hinerman* v. *Baldwin*, 67 Mont. 417, 215 Pac. 1103.) In the law of mines and mining the term "royalty" signifies that part of the reddendum which is variable, and depends upon the quantity of minerals gotten (*A. G. of Ontario* v. *Mercer*, 3 App. Cas. 767; *Saulsberry* v. *Saulsberry*, 162 Ky. 486, 172 S. W. 932; *Maloney* v. *Love*, 11 Colo. App. 288, 52 Pac. 1029; *Kissick* v. *Bolton*, 134 Iowa, 650, 112 N. W. 95), and it is held that the term has the same meaning in oil and gas leases where the lessor is entitled to a share of the product. (*Horner* v. *Gas Co.*, 71 W. Va. 345, 76 S. E. 662; *Indiana Natural Gas Co.* v. *Stewart*, 45 Ind. App. 554, 90 N. E. 384.)

It is consistently held that a grant of the royalties arising under an oil and gas lease is a grant of the oil in place. (*Paxton* v. *Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S. E. 472; *Toothman* v. *Courtney*, 62 W. Va. 167, 58 S. E. 915; *Updegraff* v. *Blue Creek Coal Co.*, 74 W. Va. 316, 81 S. E. 1050; *Weakland* v. *Cunningham* (Pa.), 7 Atl. 148.) The covenant to pay an oil royalty runs with the land. (*Akin* v. *Marshall Oil Co.*, 188 Pa. 602, 41 Atl. 748, 1119, 19 Morr.

Min. Rep. 174; *Burton* v. *Forest Oil Co.*, 204 Pa. 349, 54 Atl. 266, 22 Morr. Min. Rep. 507; *Fisher* v. *Guffey*, 193 Pa. 393, 44 Atl. 452, 20 Morr. Min. Rep. 174; *Stone* v. *Marshall Oil Co.*, 188 Pa. 602, 41 Atl. 748, 1119, 19 Morr. Min. Rep. 593; *Edmunds* v. *Mounsey*, 15 Ind. App. 399, 44 N. E. 196, 18 Morr. Min. Rep. 384; *Chandler* v. *Pittsburg Plate-Glass Co.*, 20 Ind. App. 165, 50 N. E. 400; *Fennell* v. *Guffey*, 139 Pa. 341, 20 Atl. 1048, 155 Pa. 38, 25 Atl. 785.)

The determination of the question stated at the outset of this argument is dependent entirely upon the determination of the question of the ownership of that portion of the proceeds of the wells on the leases involved herein represented by the royalty interests. Under the authority of *Tong* v. *Maher*, 45 Mont. 142, 122 Pac. 279, and *Northern Pac. Ry. Co.* v. *Musselshell County*, 74 Mont. 81, 238 Pac. 872, it is the true owner of the proceeds of the royalty oil who is assessable and taxable upon it. We do not contend that the proceeds of the royalty oil in the hands of the royalty holder is taxable as the net proceeds of a mine. Rather we contend that the proceeds of the royalty or the right to receive the royalty is a species of property subject to taxation as such and apart from the taxation of net proceeds. This has since been recognized by the legislature in enacting Chapter 140, Session Laws of 1927.

There is nothing in the constitutional provision or the statutes cited which would prevent the assessment and taxation of net proceeds of mines to more than one person in the event that more than one person was the owner of net proceeds; that is to say, if several persons own varying interests in the net proceeds, the Constitution and the statutes are broad enough to permit the assessment of each for his interest. The separate estates which different persons may own in the same land may each be subject to taxation. (*Northern Pac. Ry. Co.*, v. *Mjelde*, 48 Mont. 287, 137 Pac. 386.)

The intent of the law, section 2089, is to tax the operator, that is to say, "the person engaged in mining," only upon that portion of the proceeds of an oil well yielded to him.

The provisions of section 2090, as amended, likewise so show, making it clear that the value of the net proceeds of the oil delivered to royalty holders is not taxable to the operator unless it be yielded to him. (*Clark* v. *Slick Oil Co.,* 88 Okl. 55, 211 Pac. 496; Summers on Oil and Gas, 595.)

The principle is firmly established in this state that it is the true owner of property who must pay the tax. (*Western Ranches* v. *Custer County,* 28 Mont. 278, 72 Pac. 659; *Northern Pac. Ry. Co.* v. *Musselshell,* 54 Mont. 96, 169 Pac. 53; *Tong* v. *Maher,* 45 Mont. 142, 122 Pac. 279.)

Appellant's reply brief. (After an extended dissertation upon the questions of ownership of oil and gas in place and the nature of the estate or interest vested in a lessee under an oil and gas lease in the oil and gas producing states as disclosed by numerous cases cited:) The true and sound rule to be that an oil and gas lease, regardless of its form, vests the lessee with an interest in the nature of a chattel real, an incorporeal hereditament, but specifically with that type of interest defined as a profit *a prendre,* which in itself is an interest in land. (Thornton's Law of Oil and Gas, sec. 55e; Summers on Oil and Gas, sec. 52; 18 Michigan Law Review, 749-773.)

Where, under the terms of an oil lease, the lessor reserves as royalty a portion of the oil produced or the lessee agrees to render to the lessor as royalty a portion of such oil, the title to the reserved or rendered portion is always in the lessor. There is no single instant of time in which title thereto has been vested in the lessee. The lessee has been granted the right to take profit on the condition that a specified part of all he takes belongs to the lessor and is to be rendered and delivered to him in accordance with the terms of the lease. This rule of title is recognized by the courts of every state which has passed upon the matter. (*Shreveport El Dorado Pipe Line Co.* v. *Bennett,* 172 Ark. 804, 209 S. W. 929; *Robinson* v. *Jones,* 119 Kan. 609, 240 Pac. 957; *Davenport* v. *Schoenfelt,* 191 Ky. 234, 229 S. W. 1043; *Moss* v. *Board of*

*Supervisors,* 203 Ky. 813, 263 S. W. 368; *Mogg* v. *Farle,* 205 Ky. 25, 265 S. W. 449; *Shaw* v. *Watson,* 151 La. 893, 92 South. 375; *Northwestern Ohio Nat. Gas Co.* v. *Ullery,* 68 Ohio, 259, 67 N. E. 494, 22 Morr. Min. Rep. 647; *Clark v. Slick Oil Co.,* 88 Okl. 55, 211 Pac. 496, 507; *Barnsdall* v. *Brandford Gas Co.,* 255 Pa. 338, 26 L. R. A. (n. s.) 614, 74 Atl. 207; *Waggoner* v. *Wichita County,* 298 Fed. 818; *Pierce Petroleum Corp.* v. *Empire Gas & Fuel Co.,* 17 Fed. (2d) 758; *Carter* v. *Tyler County,* 45 W. Va. 806, 43 L. R. A. 725, 32 S. E. 216; *Smith* v. *Linden Oil Co.,* 69 W. Va. 57, 71 S. E. 167; *W. T. Waggoner Estate* v. *Wichita County,* 273 U. S. 113, 71 L. Ed. 566, 47 Sup. Ct. Rep. 271.)

The ultimate conclusion is irresistible. Under any form of lease, the royalty oil belongs to the royalty holder, unless express provision is made to the contrary.

*Mr. Jesse C. Henderson* and *Mr. R. L. Clinton,* for Respondents, submitted a brief; *Mr. Clinton* argued the cause orally.

The material issue in this case is as to what construction shall be placed upon the deductions claimed by the oil companies. It is the contention of the defendants and the position taken by the State Board of Equalization: First. That only one tax on net proceeds can be levied. Second. That when a mining company or oil company operates a mine or oil and gas lease, the operating company assumes the burden of paying the net proceeds tax upon the net proceeds derived from the operating, irrespective of the ownership of the proceeds. Third. The only deductions that can be made from the gross proceeds are the actual cost of mining, transporting and marketing, and which do not include royalties paid to royalty holders.

If the law does not provide, and it does not, that these royalties can be deducted from the gross proceeds, thereby reducing the net proceeds, the tax as levied by the state board of equalization and collected by the county treasurer is

correct. It might be observed here that in no instance does the royalty holder ever claim the oil, because custom and the provisions of the leases and assignments give the oil companies the privilege of paying the market value to the royalty holders, which in every instance is the method of distributing the proceeds to the royalty holders.

In support of our position we cite *Northern Pac. Ry. Co.* v. *Musselshell County,* 74 Mont. 81, 238 Pac. 872. (See, also, *Western Ranches* v. *Custer County,* 28 Mont. 278, 72 Pac. 659.) Taking the two decisions and reading them together, it is manifest that the law intends but one assessment; that assessment must be made against the operator of the mine, whether he be the lessee or owner; that in order to uphold the law in its uniformity of operation, no assessment can be made against a royalty owner in the premises.

If it could be otherwise, leases could be drawn in a certain way in which very large royalties could be withheld or sold out of the lease and practically the entire lease could be so distributed that the operator would only own a small part of it, and then only a very small part of the production of the oil would be subject to taxation.

*Mr. L. A. Foot,* Attorney General, *Messrs. Belden & DeKalb, Mr. Merle C. Groene* and *Mr. Nick Langshausen,* for Respondents, submitted a reply brief to Appellant's supplemental brief; *Mr. H. Leonard DeKalb* argued the cause orally.

Citing: *Coalinga Pacific Oil & Gas Co.* v. *Associated Oil Co.,* 16 Cal. App. 361, 116 Pac. 1107; *Clarke* v. *Cobb,* 121 Cal. 597, 54 Pac. 75; *Hicks* v. *Butterworth,* 30 Cal. App. 562, 159 Pac. 224; *People ex rel. Carrell* v. *Bell,* 237 Ill. 332, 15 Ann. Cas. 511, 19 L. R. A. (n. s.) 746, 86 N. E. 593; *Texas Co.* v. *Daugherty,* 107 Tex. 226, L. R. A. 1917F, 989, 176 S. W. 717, *Stephens County* v. *Mid-Kansas Oil & Gas Co.,* 113 Tex. 160, 29 A. L. R. 566, 254 S. W. 290; Summers on Oil and Gas, secs. 211, 212.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the Homestake Exploration Company as plaintiff to recover from Toole county certain net proceeds taxes assessed to the plaintiff for the year 1925, on account of royalty oil produced on three separate leased tracts of land, which taxes were paid under protest. A general demurrer was interposed to each of three causes of action stated in the plaintiff's complaint, which was by the court sustained. The appeal is from the judgment.

It appears that the plaintiff in each instance is the lessee operating real property in the production of oil. There are two kinds of royalty involved, namely: (1) The land owner's royalty, or that agreed to be paid by the original lessee to the owner of the land, and (2) overriding royalties, or such as are added to the land owner's share by the lessee on assignment of the original lease. However, both classes constitute a fixed charge in favor of the lessors from the gross amount of oil produced by the operator for the privilege of drilling for, developing and obtaining, oil from the lands.

In part, the first lease involved provides that the lessor "has leased and let, and by these presents does grant, lease, and let unto the lessee, * * * all the oil and gas and hydrocarbons and other minerals, in and under the following described land," etc., the lessee agreeing "to yield and pay to the lessor the one-eighth part or share of all oil which he may obtain and save from said land, which share shall be delivered to the lessor from the lessees' tanks *at the wells,* or for the lessor's credit to such pipe line company as may connect its lines with said tanks," etc. And by virtue of the assignment thereof to the plaintiff it became responsible for the royalty agreed to be paid unto the owner of the land, and, in addition, to deliver to the Kalispell-Kevin Oil Company, a common-law trust, "two and one-half per cent (2½ per cent) of all the oil * * * produced and saved from the land."

In the second lease under consideration it is provided as follows: "It is understood that the following named parties, their heirs, successors and assigns, have, own and hold an interest in the oil * * * under and upon the above-described premises, in the proportion set opposite their names, and are the royalty holders and owners of net royalties of the oil * * * produced and saved upon or from said lands," etc. And the plaintiff agreed "to deliver to the credit of the royalty holders, their successors or assigns, free of cost, in the pipe lines to which they may connect their wells or in tanks at the wells, the equal of fifteen (15) per cent of all oil produced and saved from these premises, or will pay in cash the equal of fifteen (15) per cent of the market value of said oil."

And in the third lease involved herein provision is made whereby there is reserved "unto the * * * lessors one-eighth (⅛) of the oil produced and saved from said lands." And, upon assignment of the lease, the plaintiff became further obligated to pay "five (5) per cent of all of the oil * * * produced and saved from said land."

A statement of the gross yield of oil was made and filed with the state board of equalization by the plaintiff on the form prescribed pursuant to the requirements of Chapter 191, Laws of 1925, amendatory of sections 2089 and 2090 of the Revised Codes of 1921, from which statement the net proceeds were by such board computed. As in the form provided, the interest of the royalty holders was separately shown. The state board of equalization thereupon "added to the number of barrels of oil reported in said statement to have been yielded to the said plaintiff the number of barrels of oil reported in said statement to have been yielded to said royalty holders," and, after making deductions prescribed by the statute, excluding royalties, certified the valuation of net proceeds from the several tracts of land to the county clerk of Toole county for the purposes of taxation.

There is but one question involved, viz.: Is the royalty oil produced in operation under these leases and intermediate

assignments properly assessable and chargeable to the plaintiff as a part of net proceeds?

Section 3 of Article XII of the Constitution provides that "the annual net proceeds of all mines and mining claims shall be taxed as provided by law." By law it is provided that all property in the state, with certain exceptions stated, is subject to taxation. (Sec. 1997, Rev. Codes 1921.) And, by the Classification Act, the annual net proceeds of all mines, after deducting the expenses allowed, are taxable, and "the right to enter upon land to explore or prospect or dig for oil, gas, coal, or mineral" is placed in class one "for the purpose of taxation." (Id. 1999.) Section 2089, as amended by Chapter 191, Laws of 1925, requires mining operators each year, between the first and tenth days of March, to make out a statement, duly verified, of the gross yield during the year preceding the first day of January and the value thereof, and file the same with the state board of equalization on or before the tenth day of March; the form of the statement being prescribed in detail.

Section 2090 specifies in detail just how the net proceeds of mines are to be calculated by the state board of equalization. Chapter 140 of the Laws of 1927, dealing specifically with the subject of the "assessment and taxation of royalty and royalty interest," was not in effect at the time the taxes in question were levied; however, in passing, the provisions thereof are worthy of note as indicating legislative policy.

Our statute leaves no doubt as to what is meant by the term "net proceeds" for the purpose of taxation. It is defined as "the sum in dollars and cents, remaining after deducting from 'the gross yield in dollars and cents all money expended for necessary labor, machinery and supplies needed and used in the mining operations and developments; for improvements, repairs and betterments necessary in and about the working of the mine * * * for transporting * * * and for marketing the product and the conversion of the same into money.' " (*Northern Pac. Ry. Co.* v. *Musselshell County,* 74

Mont. 81, 238 Pac. 872; sec. 2090, Rev. Codes 1921.)   Either
the plaintiff was the absolute owner of the royalty oil produced
under the leases, or it was not.   If it did not own such royalty
oil, it is not properly taxable therewith.

In view of the many decisions of the courts and the hopeless
[1]  confusion indicated thereby as to property rights in oil
before it is actually reduced to possession, we have given the
matter much study and thoughtful consideration.   The subject
is one of first impression in this state, and we propose to con-
fine ourselves entirely to our conception of the law applicable
to the facts in the case before us.   A few underlying principles,
which we conceive to be correct statements of the law, will be
aidful in solution of the problems presented.   The general rule
is that: ''Both petroleum and gas, as long as they remain in
the ground, are a part of the realty.   They belong to the
owner of the land, and are a part of it as long as they are on
it or in it, or subject to his control.''   (*Gas Products Co.* v.
*Rankin*, 63 Mont. 372, 24 A. L. R. 294, 207 Pac. 993; 18
R. C. L., p. 1205; Mills-Willingham on Oil and Gas, pp. 20, 21.)

''The owner of the fee has the same title to the oil and gas
in place which characterizes the ownership of solid minerals in
like circumstances, but by his lease, regardless of the form of
the granting clause, he does not intend to convey the oil and
gas in place or any interest therein.   *   *   *   By a lease of
this description the lessee is vested with a present property
right in the leased premises, namely, to search for oil and gas
under the conditions of the lease and to appropriate them as
personal property, if found, yielding the stipulated royalty.
This is a right to take a profit from the lands of another, and
within the common law classification may be regarded as a
profit *a prendre.*''   (Veasey on Oil and Gas, 18 Mich. Law
Review, 773.)

The contract is one of lease (*Corey* v. *Sunburst Oil & Gas*
[2]  *Co.*, 72 Mont. 383, 233 Pac. 909; so treated in *McDaniel*
v. *Hager-Stevenson Oil Co.*, 75 Mont. 356, 243 Pac. 582); not
a mere option, as stated in the decision of this court in *Thomas*

*v. Standard Development Co.,* 70 Mont. 156, 224 Pac. 870.
And "it should be evident that on principle a 'demise of the
land' for the purpose of prospecting for oil is not necessarily
different from a 'demise of the land' for agricultural purposes
or a demise of improved property for the purpose of conduct-
ing a grocery store." (Mills-Willingham on Oil and Gas,
p. 45.)

As to "royalties," Mr. Summers in his work on Oil and
[3]  Gas, at page 591, says: "The consideration most usually
given for the privilege of producing oil is a share of the oil
produced from the land."

The word "royalty" has a definite and well-understood mean-
ing in mining and oil operations. It means a share of the
product or profit paid to the owner of the property. (*Hiner-
man v. Baldwin,* 67 Mont. 417, 215 Pac. 1103; *Indiana Natural
Gas & Oil Co. v. Stewart,* 45 Ind. App. 554, 90 N. E. 384.)
And "an overriding royalty is a given percentage of the gross
production payable to some person other than the lessor or
persons claiming under him. It occurs where some owner of
the working interest contracts to deliver a part of the gross
production to another, usually his assignor. Such contracts
are most frequently found as a reservation in an assignment
of a lease. The provision creates in the owner of such royalty
an interest in the lease, cannot be transferred or surrendered,
except with the same formalities necessary for a transfer of the
lease, and is binding upon subsequent assignees of the lease,
except innocent purchasers." (Mills-Willingham Law of Oil
and Gas, sec. 128.)

By the provisions of these leases and the assignments the
operator or lessee is given merely a right to enter upon the
land for the purpose of exploring for oil, and developing and
producing the same, if found. The lessee acquires no corporeal
interest in the land itself, but rather a privilege *a prendre.*
Until the actual discovery of oil, the interest of the lessee in
the land is inchoate. Oil remaining in the ground before re-
covery is a part of the land, and belongs to the owner of the

land; but, when recovered, it becomes personal property. Such personalty is thereupon subject to division in accordance with the terms of the contract of lease. The provisions of the lease are controlling.

Under the terms of the first lease pleaded, right to "all the [4] oil and gas and hydrocarbons and other minerals" is granted to the lessee; and the lessee is required to "yield and pay to the lessor the one-eighth part or share of all the oil which he may obtain and save from said land, which share shall be delivered to the lessor from the lessee's tanks at the wells, or for the lessors' credit to such pipe-line company as may connect its lines with said tanks." Complete title to all oil recovered is thus vested in the lessee; the latter being required to thereafter yield unto the lessor the one-eighth part thereof.

The royalty oil under the terms of this lease upon recovery is the property of the lessee, and, as such, the net proceeds thereof were properly assessable and taxable to it. The owner of the land from which the oil was extracted retained no interest in the oil produced, and the royalty provisions simply established a measure fixing the rent to be paid by the lessee.

The rule is that, where by the terms of the lease the lessee is given absolute dominion over the entire production, complete title in all of the oil produced vests in the lessee upon its recovery. "A transfer vests in the transferee all the actual title to the thing transferred which the transferrer then has, unless a different intention is expressed or is necessarily implied" (Rev. Codes 1921, sec. 6856), and a transfer in writing as applied to real estate is a grant (Id., sec. 6842), effective upon delivery by the grantor (Id., sec. 6843).

Our decision in the case of *Northern Pac. Ry. Co.* v. *Musselshell County,* 74 Mont. 81, 238 Pac. 872, is controlling. (*W. T. Waggoner Estate* v. *Wichita County,* 273 U. S. 113, 71 L. Ed. 566, 47 Sup. Ct. Rep. 271.) The rent by the terms of a lease may be made payable in a share of the products of the land equally as well as in money. (8 Cal. Jur. 709.) The terms

of the contract control and determine the character thereof. (*Cook-Reynolds Co.* v. *Wilson*, 67 Mont. 147, 214 Pac. 1104.) A cotenancy does not exist unless clearly shown by the language employed.

The same principles are applicable to the assignment of the lease, and the overriding royalty of two and one-half per cent of the oil produced and saved. It amounts merely to an additional rental to be paid by the operator for the transfer of all the owner's interest in the oil. The terms of the lease itself control as respects the lessee's rights, and thereby the lessee must yield and pay the rent prescribed for the privilege of holding under the grant of *all* of the lessor's property interest in and to "the oil and gas and hydrocarbons and other minerals, in and under  *  *  *  the land." In accordance with the lease provisions, the lessee is granted complete ownership of *all of the oil,* and pays therefor "one-eighth part or share of all oil which he may obtain and save from the land," and the assignment of the lease merely adds to the rentals the assignee is required to pay for the property rights granted by the lease. Otherwise, its provisions remain unchanged.

A different situation is presented by the terms of the second [5] and third leases. In the second one it was understood and agreed that the lessors "*own an interest in the oil,* under and upon the above described premises,  *  *  *  and are the royalty holders *and owners* of net royalties of the oil produced and saved upon or from said lands." And the lessee covenanted "to deliver to the credit of the royalty holders  *  *  * the equal of fifteen per cent of all oil produced and saved from these premises, *or* will pay in cash the equal of fifteen per cent of the market value of said oil." Here the lessors retained their ownership of a specified interest in the oil to be produced, to be delivered to the lessors (royalty holders) in kind, *or* the equivalent in money based on its market value. The lessee may satisfy its obligation in either manner as it may elect, but in either event it has no interest in such royalty oil, for by the terms of the contract it is set aside as the independent property of the lessor. The lessee brings it to the

surface, and in consequence is lawfully possessed of the lessor's interest for the time, but only for the exclusive use and benefit of the lessors. Whether oil in kind or its market value in money, it constitutes the separate property of the lessors, for the simple reason that it is by the contract reserved to the lessors for their exclusive use and benefit. The lessors are clearly entitled to have separated and delivered to them in kind their proportion of the oil, the ownership of which is so retained, *or* to have its market value in money, and the lessee has no right, power, dominion or control over it, save for the exclusive benefit of the lessors.

The determinative question is: What rights have the lessors by the contract retained to themselves? If all rights to the oil produced are granted, the lessor retains no portion thereof; but, where a part of the oil to be produced is by the lessor reserved to himself, title and ownership of such portion remains in him after production, although under the contract the lessee may elect to pay the lessor the market value thereof.

The third lease is in like category, although its provisions are more readily understood and applied. Thereby the lessor specifically reserves to itself ''one-eighth of all oil produced and saved from said lands.'' The one-eighth part of all the oil produced and saved by the operator is reserved to the lessors in kind. Title to the royalty oil is at all times in the lessors, and the operator has no right, title, or claim thereto. It must be by the operator set aside in specie from the gross yield, and is not properly included in computation of the net proceeds of the operator. The true owner of the oil, whatever the proportion of the whole may be, is properly assessable and taxable with the value of such divisible interest. Here the royalty, as a separate species of personal property, is taxable to its true owner. For example, the operator produces from the well eighty barrels of oil, of which the land owner is entitled by reservation to one-eighth, or ten barrels. The operator has produced seventy barrels for himself, upon which he is taxable on the basis of net proceeds, while the land owner has his pro-

portion of the oil set aside to him without operation cost, and he is taxable therefor as "net proceeds" on the basis of its cash value without deduction, for it is delivered to him without expense. The net proceeds to him is the market value of the oil without deduction. The separate interests which different persons may own in the same property is properly assessable and taxable to the true owner of the particular interest, and it is unlawful to tax a person for property he does not own. (*Western Ranches Co.* v. *Custer County*, 28 Mont. 278, 72 Pac. 659; *Tong* v. *Maher*, 45 Mont. 142, 122 Pac. 279; *Northern Pac. Ry. Co.* v. *Musselshell County*, supra.)

By the terms of the contracts, it is manifest that the operator has no proprietary interest in the royalty oil under the terms of either the second or third lease contracts. It is not his property in any sense. And there is nothing in the Constitution [6] or statutes which prevents the assessment and taxation of net proceeds of mines to more than one person, where several persons own separate divisible interests.

For purposes of taxation it is by our Constitution provided that "the word 'property' as used in this article is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed), capable of private ownership." (Sec. 17, Art. XII.) And by statute "the ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." (Sec. 6663, Rev. Codes 1921.)

In the case of *Northern Pac. Ry. Co.* v. *Musselshell County*, supra, it is said: "The statute clearly contemplates but one assessment; to one person, corporation or association, and that to the one either 'engaged in mining' or 'mining from or upon any mine whatsoever,' and before the assessment is made it must be determined whether that one is the 'owner or lessee.' The assessment and levy cannot be divided and a portion assessed to each, nor can a tax be lawfully levied against a person for property which he does not own."

There the court was dealing with complete title vested in a single person to a particular class of property, rather than

independent divisible interests in property. What is therein stated as to but one assessment to be made only to one person has to do with the facts in the particular case. The facts as to the ownership of the property in this case are different. Here we have more than one owner. "It is impossible so to use language as that general expressions apply in every instance with the same meaning to every condition of facts." (*Sun River Stock & Land Co.* v. *Montana Trust & Savings Bank,* ante, p. 222, 262 Pac. 1039.) In the *Musselshell County Case,* however, it was by the court made plain that a tax may not be legally levied against a person for property he does not own.

The overriding royalties in these instances are in the same category. Such royalties are to be delivered to the assignor of the lease in kind. They constitute an additional amount of oil reserved in consequence of assignment of the lease. So that here the amount reserved and set aside at well mouth as the landlord's share under the second lease is fifteen per cent, and the landlord's and assignor's shares under the third lease are seventeen and one-half per cent of the oil produced and saved from the land. This amount is deductible in computing net proceeds to the operator, for it is not, and never was, its property. It is the separate property of the assignor of the lease, divisible and easy of determination.

The demurrer to the plaintiff's first cause of action was by the court properly sustained, but as to the second and third causes of action it should have been overruled.

For the reasons stated, the judgment is reversed and the cause remanded to the district court of Toole county, with directions to proceed further in the cause in accordance with the views expressed in this opinion.

On motion for rehearing, the original opinion is modified and withdrawn, and this one substituted as the final conclusion of this court.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.