FULTON OIL CO., Respondent, *v.* TOOLE COUNTY, Appellant.

(No. 6,510.)

(Submitted November 14, 1929. Decided January 9, 1930.)

[283 Pac. 769.]

368

*Mr. R. L. Clinton* and *Mr. Walter R. Knaack,* for Appellant, submitted an original and a reply brief; *Mr. Clinton* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief, and argued the cause orally.

HONORABLE WILLIAM L. FORD, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, delivered the opinion of the court.

The above-entitled cause was submitted to the trial court on an agreed statement of facts, in which it is disclosed that

on the seventh day of May, 1920, W. H. Byrne leased to Thor A. Thompson all the oil, gas, hydrocarbons and other minerals in and under the lands therein described, and in said lease the following granting clause appears: " * * * Has leased and let and by these presents does grant, lease and let unto the said Thor A. Thompson and assigns * * * "—the lessee agreeing to yield and pay to the lessor the one-eighth part or share of all the oil, etc., which he may obtain, which lease was afterwards assigned to the Kalispell-Kevin Oil Company, and said company on January 30, 1925, entered into what is termed by the parties "an operating agreement," covering a portion of said land, with one W. H. Essex. The agreement, after reciting the fact that the company was the owner and holder of the Byrne lease and was desirous of having the land prospected and drilled for oil and gas, contains the following provision:

"Now therefore, it is hereby mutually understood and agreed by and between the parties hereto that the said trust in consideration of the said party of the second part putting on a drill on the above described lands with a rig of equipment capable of drilling such oil and gas wells to the Madison Lime, unless oil or gas in paying quantities shall be found prior thereto, said drilling operations to be started on or before the first day of May, A. D. 1925, the party of the second part shall receive therefor seventy-five per cent (75%) of all oil or gas found in or under said premises, it being understood and agreed that the said W. H. Byrne, his heirs, executors, administrators or assigns, shall receive twelve and one-half per cent (12½%) of all said oil and gas produced and saved, delivered free of costs to the said W. H. Byrne, his heirs or assigns, in a pipe line or tank, and that the said trust shall receive twelve and one-half per cent (12½%) of all oil or gas in, or under said premises. All of said oil or gas to be delivered free of costs to the said trust, its successor or assigns, in a pipe line or tank, and

"It is further agreed and understood, that as a further consideration for said seventy-five per cent (75%) of all the oil

and gas, the said W. H. Essex, the said party of the second part, his heirs, administrators or assigns is to pay to said trust the sum of one hundred ($100) per acre for the oil or gas discovered on said above-described lands.''

It appears that on the sixth day of April, 1925, the Kalispell- ■ Kevin Oil Company entered into what the parties term an operating agreement, covering the balance of the land contained in the Byrne lease, with one William E. Rice, which contained substantially the same terms as the agreement with W. H. Essex; that the Fulton Oil Company succeeded to the rights of Essex and Rice under said operating agreements, and operated the lands under the agreements for the year 1925. During that year the gross value of all products obtained therefrom was $319,629.17; and the money expended for necessary labor, machinery, and supplies needed and used in the mining operations and development in the extraction of the oil was $107,441.38. Upon submission of the report to the state board of equalization, the plaintiff was assessed with the entire gross value of the products above, less the expenses for labor, machinery and supplies above, and the tax computed on such valuation, and plaintiff paid one-half, the first installment (Laws 1925, Chap. 142), of the tax levied on the assessed valuation of twenty-five per cent of the gross valuation of the products obtained, under protest, on May 31, 1927, and instituted this action for the recovery of the same. The court entered judgment in favor of the plaintiff for the sum of $1,970.90, being the amount of the tax paid under protest, but refused to allow interest thereon. Defendant appealed from the judgment, and the plaintiff, on its part, assigns as error the failure of the court to allow interest on the amount of the tax recovered.

The question submitted for decision is whether or not, in the calculation of plaintiff's net proceeds tax, plaintiff should be charged with the entire production from the premises covered by the two operating agreements, or only seventy-five per cent thereof.

The question here involved was fully discussed in the very able opinion of Mr. Justice Galen in the case of *Homestake Exploration Corp.* v. *Schoregge,* 81 Mont. 604, 264 Pac. 388, and we see no good reason for changing our views as therein expressed, and it remains for us to apply the rule announced in that decision to the facts involved in this case.

It can readily be seen from the operating agreements above set forth that the plaintiff did not obtain title to the oil or gas in place; nor did the agreements operate as assignments of an interest in the lease. Plaintiff is merely given seventy-five per cent of the oil and gas it produces; nor can it be said under any construction of the agreements that the twelve and one-half per cent of the oil and gas delivered to W. H. Byrne, the land owner, and the twelve and one-half per cent of the oil and gas delivered to the Kalispell-Kevin Oil Company was rental for said land, for the reason that, under the terms of the agreement, the plaintiff did not rent the land but had the mere right to go upon the land covered by the Byrne lease for the purpose of prospecting and developing the same in accordance with the agreements. The Kalispell-Kevin Oil Company reserved to itself twenty-five per cent of all oil and gas, etc., produced, out of which it was obligated to pay to W. H. Byrne, lessor, under the terms of the lease one-eighth of all oil and gas produced. The plaintiff therefore was the owner of only seventy-five per cent of the oil and gas produced and legally assessable for that amount only. (*Homestake Exploration Corp.* v. *Schoregge,* supra, and cases therein cited.) The remaining twenty-five per cent of such oil should have been assessed to the owner thereof. (Id.; *Byrne* v. *Fulton Oil Co.,* 85 Mont. 329, 278 Pac. 514.)

Section 2271 of the Revised Codes of 1921 provides: "In case it be determined in such action that said tax or license, or any portion thereof so paid under protest, was unlawfully collected, judgment for recovery thereof and lawful interest thereon, together with cost of action, shall be entered in favor of the plaintiff " The Nineteenth Legislative Assembly amended section 2269, Revised Codes of 1921, by Chapter

142 of the Laws of 1925, which said amendment provides: "If such action is finally determined adversely to such county or municipality, or the treasurer thereof, then the treasurer shall, upon receiving a certified copy of the final judgment in said action, refund the amount of such license or tax, with costs of suit without interest, to the person in whose favor such judgment is rendered; provided, that if such action was commenced for the purpose of recovering the first installment, or any portion thereof, of any such license or tax, and any subsequent installment thereof, has been paid under protest, as herein provided, then the county treasurer shall, at the time of refunding the amount of such first installment required by such judgment also refund such portion of any subsequent installment as the person holding such judgment is entitled to recover, without interest." The title of Chapter 142 is as follows: "An Act to Amend Sections 2269 and 2270 Revised Codes of Montana 1921, Relating to Payment of Taxes Under Protest"—and said Act is followed with this repealing clause: "All Acts and parts of Acts in conflict herewith are hereby repealed." (Sec. 2.)

Counsel for plaintiff contends that the portion of Chapter 142 above set forth does not have the effect of repealing section 2271, providing for the recovery of interest; and, if it has such effect, the Act in that respect is unconstitutional under section 23, Article V of the Constitution, in that it embraces a subject not expressed in the title of the Act.

The recovery of interest, as provided by section 2271, and the repayment by the treasurer of the tax without interest, as provided by Chapter 142, are so repugnant, that the two Acts cannot be reconciled, and consequently Chapter 142 repeals section 2271. (*State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157; *Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836.) And we do not agree with counsel that the interest mentioned in Chapter 142 applies only to the costs. Counsel cites no case, nor does he argue in his brief the contention that Chapter 142 is unconstitutional; consequently we will rest with the presumption that the Act is valid

until its unconstitutionality is shown beyond a reasonable doubt. (*Martien* v. *Porter*, 68 Mont. 450, 219 Pac. 817.)

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.