WILLIARD ET AL., TRUSTEES OF GORDON CAMPBELL-KEVIN SYNDICATE, APPELLANTS, *v.* FEDERAL SURETY CO., RESPONDENT.

(No. 6,885.)

(Submitted February 8, 1932. Decided February 29, 1932.)

[8 Pac. (2d) 633.]

466

*Mr. Louis P. Donovan* and *Messrs. Belden & DeKalb,* for Appellants, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

No appearance in behalf of Respondent.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff syndicate to recover from the defendant $10,000 damages, alleged to have been sustained in consequence of the issuance of an attachment against plaintiff's property in an action commenced by the Gordon Campbell Petroleum Company against the plaintiff to recover from it the sum of $41,651 on an account stated, bond for which attachment was executed by the defendant in the sum of $10,000. Upon issue joined the cause was tried to a jury. Upon the completion of the testimony offered by the plaintiff, the court granted the defendant's motion for a nonsuit, and judgment thereon was regularly entered, from which the plaintiff has appealed.

It appears that the plaintiff at the time the attachment action was instituted was the owner and holder of record of several oil and gas leases on lands located in Cascade and Toole counties, which were by the sheriffs of such counties attached in the action as real estate or an interest therein, by filing with the county clerk of Toole county, and with the county clerk of Cascade county, as to property covered by leases held by the defendant in such action in each of said counties, a copy of the writ of attachment, together with a description of the property, or any interest therein, standing on the record in the county in the name of the plaintiff, who was defendant in such action. Damages are claimed by reason of

the fact that the plaintiff's title to the property was thereby clouded and rendered unmarketable and unmerchantable, and by reason of the fact that the plaintiff herein was put to great expense in bringing about a final determination of the action on the merits in the plaintiff's favor. (*Gordon Campbell Petroleum Co.* v. *Gordon Campbell-Kevin Syndicate*, 75 Mont. 261, 242 Pac. 540.) The provisions of the undertaking on attachment follow the requirements of section 9259, Rev. Codes of 1921, and provide "that if the defendant recover judgment * * * the plaintiff will pay all costs that may be awarded to the defendant, and all damages he may sustain by reason of the issuing out of the attachment."

The plaintiff has assigned many errors as reason to reverse the judgment and order a new trial, but all of such alleged errors revolve around the basic question as to whether the attachment of the plaintiff's interest in the several oil and gas leases was legal. Apparently the court took the view that the attachments were illegal and therefore could have been dissolved on motion made in the action, thus summarily removing any possible cloud on the title; and thereby removing from consideration any damages incurred by reason of delay and the expense incident to a trial on the merits. Upon this theory much of the plaintiff's offered evidence as to the value of the property before and after the attachment, and the actual damages by plaintiff sustained in consequence, was refused admission.

In passing upon the admissibility of evidence tendered by the plaintiff in the case before us, the court said: "My present impression is, I do not hesitate to say, that there was no real estate attached in this case. That is my firm impression. * * * I really believe at this time I would sustain a motion to strike all the testimony concerning the attachment in this case." And again: "The offer of proof is denied for the reason that as the case now appears, this court is of the opinion that the attachment should have been dissolved and discharged immediately, * * * in fact, that no attachment was ever made of the properties." Plaintiff's Exhibit

P, being an oil and gas lease dated June 3, 1920, executed by Joseph C. Byrne to Gordon Campbell, was admitted in evidence, so as to advise the court of the form of all of the leases involved, the granting clause, and other pertinent provisions of which read as follows: "That the said party of the first part [Byrne] for and in consideration of the sum of One Dollar ($1.00) to him in hand paid by the said party of the second part [Campbell], the receipt whereof is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of the party of the second part, to be paid, kept and performed, has granted, demised and leased and by these presents, does grant, demise and lease unto the said party of the second part, his heirs, successors, or assigns, for the sole and only purpose of mining and operating for oil, gas, hydro-carbons and other minerals and the laying of pipe lines and of building tanks, power stations and structures thereon to produce and take care of said products for the term of twenty years, and as much longer thereafter as oil, gas, hydro-carbons or other minerals are found in paying quantities, all those certain tracts of land situated in Toole county, State of Montana, and described as follows, to-wit: [Here is set forth a description of the land.] Reserving, however, to the said party of the first part, the right to possess and enjoy the premises above described for any and all purposes other than the purpose for which this grant is made and not inconsistent therewith; provided, however, that the possession and enjoyment of the said premises by the said party of the first part shall not in any way interfere with or impair the rights of the second party to mine and operate thereon for the purposes herein specified. It is agreed that this grant shall remain in force for the term of twenty years from the date hereof, and as long thereafter as oil, gas or other hydro-carbons or minerals are produced therefrom in commercial quantity unless terminated earlier as hereinafter provided. In consideration of the premises, the said party of the second part covenants and agrees: First: To deliver to the credit of the first party, his heirs, successors or assigns, free of costs, in

the pipe lines to which they may connect their wells or in tanks at the wells, the equal of 12½ per cent. of all oil produced and saved from these premises, or will pay in cash the equal of 12½ per cent. of the market value of said oil, method of payment to be optional with party of the first part. Second: To pay as and for a royalty for the gas from each and every gas well drilled on said premises, the gas from which is marketed and used off the premises, a sum equal to 12½ per cent. of the market value of said gas. Third: To pay as and for a royalty for all other hydro-carbons or minerals marketed from said premises a sum of money equal to 12½ per cent. of the market value of said hyrdo-carbons or minerals less the cost of production thereof. Fourth: To pay as and for a royalty for all other minerals sold or marketed from the above premises 12½ per cent. of the returns from the sale of said minerals. * * * The party of the second part agrees to commence a well on said lease within 36 months from the date hereof. In case no well is drilled for oil or gas or other hydro-carbon on the said lease within three years from the date hereof all rights and obligations secured under this grant and demise shall cease unless the party of the second part shall at the expiration of said three years, elect from year to year to continue this grant and demise in force by paying quarterly in advance twenty-five cents per acre until said well is commenced; and it is agreed that the commencement and completion of said well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease.''

The determinative question presented for decision is whether the plaintiff suffered any damage by reason of the filing in the office of the county clerk of a notice of attachment of plaintiff's oil and gas leases of record, accompanied by a copy of the writ, as provided by law in the case of the attachment of real estate or interests therein.

The statute provides that the sheriff to whom the writ is directed and delivered must execute the same without delay as to real property, standing upon the records of the county

in the name of the defendant, "by filing with the county clerk a copy of the writ, together with the description of the property attached, and a notice that it is attached. Real property, or an interest therein, belonging to the defendant, and held by any other person, or standing on the records of the county in the name of any other person," is attached in the same manner, adding merely that the property so held of record in the name of another whose name is mentioned is attached. The county clerk must then index such attachment in the names both of the defendant and of the person by whom the property is held, or in whose name it stands on the record. (Sec. 9262, Rev. Codes 1921.) "Real or immovable property consists of: 1. Land; 2. That which is affixed to land; 3. That which is incidental or appurtenant to land; 4. That which is immovable by law." (Id., sec. 6667.) "The word 'property' includes property real and personal" and the term "real property" is "co-extensive with lands, tenements, hereditaments and possessory titles to public lands"; and "the words 'personal property' include money, goods, chattels, things in action and evidence of debt." (Sec. 16, Id.) "The term 'real estate' includes: * * * All mines, minerals, and quarries in and under the land, * * * and all rights and privileges appertaining thereto." (Id., sec. 1996.) "Estates of inheritance and for life are called estates of freehold; estates for years are chattels real; and estates at will are chattel interests, but are not liable as such to sale on execution." (Id., sec. 6727.) And upon execution sale a leasehold interest in lands is treated as real estate. (Id., sec. 9441; *Wheeler* v. *McIntyre*, 55 Mont. 295, 175 Pac. 892.) Such leases have, in statutes enacted having special applicability to them, been treated by our lawmakers as an interest in real estate. Sections 8375 to 8377, inclusive, of the Revised Codes of 1921, with amendments (Laws 1923, Chap. 152), pertain to labor and materialmen's liens on oil and gas-wells and pipe-lines. By section 8377 (as amended by the Laws of 1923, p. 435, Chap. 152, sec. 2), it is provided that such liens "shall be enforced in the same manner, * * * and the materialman's statement, or the

lien. of any laborer herein mentioned, shall be filed in the same manner as now provided by the laws of Montana for materialmen's and mechanics' liens, except that the time within which such liens must be filed shall be six months instead of ninety days; and the method of procedure provided by the laws of the State of Montana for enforcing materialmen's and mechanics' liens shall govern the enforcement thereof.'' The lien is perfected by filing the statement prescribed in section 8340 with the county clerk of the county wherein the property or premises is situated, and by the statute leasehold interests are expressly made subject to such liens. (Secs. 8343, 8377.) And the failure of a lessee to release of record an oil and gas lease entitles the owner to recover damages sustained (Id., sec. 6903), the measure of damages recoverable being the highest market value of the oil and gas lease at any time from the date the record should have been cleared to the time of trial. (*Solberg* v. *Sunburst Oil & Gas Co.*, 76 Mont. 254, 246 Pac. 168.)

The general rule is that both petroleum and gas, as long as they remain in the ground, are a part of the realty. They belong to the owner of the land, and are a part of it as long as they are on or in it, or subject to his control. (*Gas Products Co.* v. *Rankin*, 63 Mont. 372, 24 A. L. R. 294, 207 Pac. 993.) And by a lease of land by the owner of the character here under consideration, the lessee is vested with a present property right in the leased premises, i. e., in lands, viz., to search for oil and gas under the conditions of the lease and to appropriate them as personal property when found, yielding the agreed royalty to the owner. It is a right to take a profit from the lands of another, at common law regarded as a profit *à prendre*. (*Homestake Exploration Corp.* v. *Schoregge*, 81 Mont. 604, 264 Pac. 388.)

''Profit *à prendre*'' is defined as ''the right to take a part of the soil or produce of the land. A right to the products or proceeds of land. This right, if enjoyed by reason of holding another estate, is regarded as an easement appurtenant to the estate; whereas, if it belongs to an individual, distinct from

ownership in other lands, it takes the character of an interest or estate in the land itself, rather than that of a proper easement." (Anderson's Dictionary of Law, p. 822.) It is an interest in land (Summers on Oil & Gas, p. 169), although incorporeal (*Gas Products Co.* v. *Rankin,* supra).

In our opinion the right of a lessee to take oil or gas stratum from its place and convert it to the lessee's own use is an interest in real estate within the meaning of section 9262 of the Revised Codes 1921, relative to the attachment of real estate. (*Graciosa Oil Co.* v. *Santa Barbara County,* 155 Cal. 140, 20 L. R. A. (n. s.) 211, 99 Pac. 483.)

It is clear to us that the learned trial judge misapplied the holding of this court in the case of *Homestead Exploration Corp.* v. *Schoregge,* 81 Mont. 605, 264 Pac. 388, 392. He based his conclusions that the plaintiff's property rights in the oil and gas leases were personalty rather than realty, and that their record attachment under the provisions of the law respecting the attachment of real estate was inoperative, upon a misconception of our holding in that case. The leases here involved purport to grant a present interest in the land, viz., a right to mine it, and operate it, for the production of oil, gas, hydrocarbons and other minerals, for the term of twenty years, and as much longer thereafter as oil, gas, hydrocarbons or other minerals are found in paying quantities, very like the terms of the first type of lease by us considered in the *Schoregge Case,* as to which we held: "The owner of the land from which the oil was extracted retained no interest in the oil produced, and the royalty provisions simply established a measure fixing the rent to be paid by the lessee. * * * 'A transfer vests in the transferee all the actual title to the thing transferred which the transferrer then has, unless a different intention is expressed or is necessarily implied' (Rev. Codes 1921, sec. 6856), and a transfer in writing as applied to real estate is a grant (Id., sec. 6842), effective upon delivery by the grantor. (Id., sec. 6843.)"

Within the meaning of our attachment statute (sec. 9262) it is to be regarded as an interest in real estate. This appears clear when we pause to consider how oil and gas leases and

interests therein are necessarily handled, namely, by recording them in the office of the county clerk of the county where the lands are located. They represent a property right during their existence not capable of manual delivery—an incorporeal hereditament; and how else could the same be attached save by complying with the statute as affects real estate or an interest therein? It would be quite impossible to otherwise proceed as against the lessee's property rights under the lease before oil or gas was by him actually reduced to possession.

The weight of judicial authority is to the effect that, in ██ ██ an action on a bond given to procure an attachment, the obligors are estopped to deny the validity of the attachment proceedings. (2 R. C. L., p. 890.) And on the sheriff's return of an attachment levy, the obligors on the bond for the attachment will not be heard to question the legality of the levy made. (6 C. J. 521.) And it is generally held that a dissolution of an attachment, upon the merits, is conclusive in a subsequent action or proceeding, to recover damages caused by the attachment, that the writ was wrongfully issued. (6 C. J. 529.)

The court was in error in excluding evidence as to the ██ ██ damages by the plaintiff sustained, including the amount expended or contracted to be paid in bringing about a dissolution of the attachment. (*Plymouth Gold Min. Co.* v. *United States Fidelity & Guaranty Co.*, 35 Mont. 23, 10 Ann. Cas. 951, 88 Pac. 565; *Federal Surety Co.* v. *Basin Construction Co.*, ante, p. 114, 5 Pac. (2d) 775.) The plaintiff should not be denied the right to show by competent evidence any damages it suffered in consequence of the attachment.

The judgment is reversed and the cause remanded to the district court of Fergus county, with direction to grant the plaintiff a new trial.

Reversed and remanded.

Mr. Chief Justice Callaway and Associate Justices Angstman and Matthews concur.

Mr. Justice Ford, being disqualified, takes no part in the foregoing decision.