Cheshire,
Dec. 6, 1938.

## Bellows Falls Trust Company

*v.*

## American Mineral Products Company.

*Howard B. Lane* (by brief and orally), for Charles B. Martin.

*Lawrence F. Sherman* (of New York) and *Orville E. Cain* (*Mr. Sherman* orally), for the Seaboard Minerals Corporation.

MARBLE, J.   The Seaboard Minerals Corporation contends that Yuhas acted within his legal rights in canceling his lease and that this cancellation was not rendered nugatory by his subsequent conduct.   It further contends that the provision for an overriding royalty in the conveyance to the American Mineral Products Company of New Hampshire was an independent agreement between Martin

and that company and did not bind the company's successors or assigns.

It is suggested that since the notices of cancellation were in proper form and given after default, the lease had become legally canceled and could not later be reinstated or revived. This argument disregards the specific finding that the proceedings to annul the lease were never brought to a head.

The treasurer of the American Mineral Products Company of Delaware testified, without objection, that Yuhas stated to him that he had withdrawn the notices, that he was sorry he had ever started any such proceeding, that it was all a mistake, and that the matter was entirely closed. Martin testified that he had a talk with Yuhas before the mine was shut down in February, 1931, and that Yuhas then told him that he had received his money and was no longer interested in canceling the lease but wanted the mine to be worked. He further testified that he did not notify the Delaware company that Yuhas "was not going to insist on his earlier notices" because the treasurer of that company had already informed him that Yuhas "had withdrawn his complaint." This evidence fully justified the court's conclusion that the lease remained in full force. 2 Tiffany, L. & T., *pp.* 1386, 1387; *Norris* v. *Morrill*, 40 N. H. 395, 403; *Kilgore* v. *Association*, 78 N. H. 498, 501, 502.

The Seaboard corporation's second contention can be sustained only if the conveyance to the American Mineral Products Company of New Hampshire is an assignment for all purposes of the case. If it is to be so treated, then the Seaboard corporation is under no liability to Martin, since there would be neither privity of contract nor privity of estate between them. There are situations, however, where an instrument may constitute an assignment so far as the rights of the original landlord are concerned and a sublease as between the lessee and his transferee. Such would seem to be the situation here.

" . . . the rule is well settled that if the lessee parts with his whole term or interest as lessee, . . . it will, as to the landlord, amount to an assignment of the lease, and the essence of the instrument as an assignment, so far as the original lessor is concerned, will not be destroyed by its reserving a new rent to the assignor with a power of re-entering for non-payment, . . . and the assignee, so long as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent . . . .

"But as between the *original lessee* and *his lessee* or transferee,

even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them.

"The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as assignee, to the original lessor, but at the same time the relation of landlord and tenant is created between the parties to the second demise, if they so intended." *Stewart* v. *Railroad*, 102 N. Y. 601, 608. To the same effect, see *Orr* v. *Neilly*, 67 Fed. (2d) 423, 424, and authorities cited; *Saling* v. *Flesch*, 85 Mont. 106, 111, and cases cited; Annotation, 82 A. L. R. 1273, 1274, 1275.

The language of the opinion in *Machinist* v. *Koorkanian*, 82 N. H. 249, 252, is not to be interpreted as establishing a stricter rule than that outlined above. Indeed, one of the reasons given for holding the transfer to be an assignment in that case is that the lessee "made no attempt to reserve a rent to himself" or "to create in any way a relation of landlord and tenant" between himself and his transferees.

By the stipulation for an overriding royalty Martin retained in his own favor an "economic interest" in the feldspar "in place, identical with that of a lessor." *Palmer* v. *Bender*, 287 U. S. 551, 558. This he had a legal right to do. He and Ewing were tenants in common, each having a separate estate. P. L., c. 213, s. 17. The instrument which they executed did not constitute a joint assignment or demise but comprised a separate transfer by each "of his undivided share, and a confirmation thereof by the other." 1 Tiffany, L. & T., p. 405. See *Mussey* v. *Holt*, 24 N. H. 248, 254. Ewing did not participate in the royalty presumably because he was actively interested in the American Mineral Products Company of New Hampshire. As to his rights under the Yuhas lease, the transfer of February 14, 1929, operated as an assignment.

The fact, however, that this instrument provides for the payment to Martin of an overriding royalty, expressly stated to be binding upon the successors and assigns of the New Hampshire corporation, definitely indicates an intention to create, as between Martin and the New Hampshire company, the relation of landlord and tenant. See *Homestake &c. Co.* v. *Schoregge*, 81 Mont. 604, 615; *Sunburst &c. Co.* v. *Callender*, 84 Mont. 178, 190. It follows that Martin's rights against that company and succeeding assignees are the same as though he were not himself holding under a lease. 1 Tiffany, L. & T., p. 1002.

By accepting the transfer of February 14, 1929, the transferee agreed to its terms and impliedly promised to perform the duties thereby imposed. *Machinist* v. *Koorkanian*, 82 N. H. 249, 251, and cases cited. The promise to pay royalties ran with the land (Annotation, 79 A. L. R. 496, 499, 500), and each assignee, when it accepted the benefit of its assignment assumed this obligation. The Seaboard Minerals Corporation acquired no greater right than its vendor possessed, and the receiver had only the title of the corporation whose affairs he was administering. *Goudie* v. *Company*, 81 N. H. 88, 94.

The liability of the Seaboard corporation to Martin depends, therefore, upon privity of estate, and since that liability continued while the corporation remained in possession under the assignment (*Trustees of Dartmouth College* v. *Clough*, 8 N. H. 22, 29), the obligation to pay the overriding royalty could not be avoided by any agreement or stipulation between Yuhas and the corporation purporting to cancel or annul the original lease.

As bearing on the practical construction placed by the parties on the instrument in question it should be noted that Ewing was president of each of the three corporations which acquired rights under that document, that the Delaware and Seaboard companies had the same treasurer, that the Delaware corporation rendered monthly statements to both Yuhas and Martin showing the royalty due to each, and that after the Delaware company had ceased operations, Ewing, in a letter to the treasurer, suggested the making of "a new lease with Joe Yuhas direct" in order to "eliminate Martin entirely."

The Presiding Justice correctly ruled that the Seaboard Minerals Corporation was not obliged to renew the original lease for another ten-year period. The only interest Martin had in this right of renewal was that of a tenant in common. This interest he transferred to the American Mineral Products Company of New Hampshire without restriction. Since the original lessees were not obliged to renew the lease, neither the Products company nor any subsequent assignee was required to renew it unless such an obligation was imposed by the terms of the transfer. *Goocey* v. *Hopkins*, 206 Ky. 176, 178. Unlike the assignment in *Probst* v. *Hughes*, 143 Okla. 11, the transfer of February 14, 1929, contains no provision that the royalty reservation shall apply to any renewal or modification of the lease which the assignee, its successors or assigns, may secure.

Ordinarily no fiduciary relation exists between sub-lessee and sublessor (*Flat-Marks &c. Corporation* v. *Stores*, 74 Fed. (2d) 210, 211,

and cases cited), and there are here no special circumstances giving rise to such a relation between the contending parties.

It follows that the Seaboard Minerals Corporation is not required to pay to Martin a royalty on the feldspar mined after December 27, 1937, the date on which the original lease expired.

*Exceptions overruled.*

BRANCH, J., was absent: the others concurred.