NORTHERN PACIFIC RAILWAY CO., RESPONDENT, v.
MUSSELSHELL COUNTY, APPELLANT.

(No. 5,748.)

(Submitted June 20, 1925.  Decided July 6, 1925.)

[238 Pac. 872.]

*Taxation—Coal Mines—Owners and Lessees—Net Proceeds—
To Whom Assessable.*

Coal Mines—Net Proceeds Assessable to Lessee.
  1.  Under sections 2088–2096, Revised Codes of 1921, the lessee of a
  (coal) mine, *i. e.*, the person engaged in mining, and not the owner,
  is the proper party to whom net proceeds are assessable.
Same—Net Proceeds—How Determined—Rents and Royalties not De-
ductible from Gross Proceeds.
  2.  Since the legislature in its definition of the term "net proceeds"
  of mines (sec. 2090, Rev. Codes) has designated the deductions from
  the gross yield allowable in arriving at such proceeds, no others are
  permissible; hence amounts paid as rent or royalties by the lessee
  of the mine to the owner, not therein enumerated as items of cost of
  mining properly deductible, may not be deducted.
Same—Assessment of Rental as Part of Net Proceeds Error.
  3.  A tax cannot lawfully be levied against a person for property
  he does not own; and since property in the shape of net proceeds
  of a mine belongs to the lessee and not to the owner of it, and the
  statute contemplates but one assessment thereof, to-wit: to the les-
  see, it was error to assess to the owner, as part of the net proceeds
  of the mine, the rental received by him from the lessee.

Taxation, 37 Cyc., p. 776, n. 74; p. 790, n. 73.

*Appeal from District Court, Lewis and Clark County;
A. J. Horsky, Judge.*

ACTION by the Northern Pacific Railway Company against
Musselshell County.  Judgment for plaintiff and defendant
appeals.  Affirmed.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angst-
man,* Assistant Attorney General, for Appellant, submitted
a brief and one in reply to that of Respondent; *Mr. Angst-
man* argued the cause orally.

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a judgment awarding plaintiff the sum of $1,837.69, with interest from November 30, 1922, being the amount paid by plaintiff on that date, under protest, as the tax computed on an assessment of the amount received for the year ending June 30, 1922, from lessees of plaintiff's coal mines in Musselshell county.

The complaint herein alleges that these mines were operated by certain coal companies under leases which provide for the payment of ten cents per ton for all coal extracted, but with the proviso that during the first three years payment should be made, in advance, on a minimum production of 100,000 tons, and thereafter on a minimum of 150,000 tons, whether that amount of coal was extracted or not, granting the privilege, however, of mining the amount paid for at any time during the terms of the leases without further payment. The complaint alleges that these payments were made as rental, while the leases, made a part of the complaint, state that the payments are royalties to be treated as rent. The complaint then alleges that the sum of $24,716.71, paid as rent for the year ending June 30, 1922, was disclosed by the statement made to the state board of equalization, pursuant to the requirement of section 2089, Revised Codes of 1921, by the lessees of said mines, and was certified to the clerk of said county, and by him extended on the assessment-roll as "net proceeds" of the mining operations of the plaintiff; that, deeming the tax invalid, plaintiff paid the same under protest.

The answer admits these allegations, except as to the amount so received, which, it alleges, was received as royalty; and alleges that the sum mentioned "represented

a portion of the proceeds from the operation of the mines referred to," and that, had said sum not been paid to the plaintiff by the lessees as royalty, those lessees would have been obliged to pay a net proceeds tax upon the amount, in addition to the sum they did pay as net proceeds tax on the output of the mines, but that said amount was deducted by the state board of equalization "as items of cost in the excavation and mining of coal."

No reply was filed, and each of the parties moved for judgment on the pleadings. The court sustained plaintiff's motion and denied that of defendant, and thereupon judgment was entered as heretofore stated.

The attorney general, appearing for the defendant, asserts that the only question involved in this appeal is, "Must the lessor of a mining claim pay a net proceeds tax on the portion of the net proceeds received by him as royalty?" and relies upon the authority of *Tong* v. *Maher*, 45 Mont. 142, 122 Pac. 279, for an affirmative answer to this question.

Counsel for plaintiff, on the other hand, contend that, under the law as it exists at the present time, the assessment of net proceeds against the owner of a mine operated under a lease is not permissible; that the amount paid to it by the leasers is not royalty but rent; and that the same is not a part of the "net proceeds" of the mine at all.

1. To whom are the "net proceeds of a mine" assess-
[1]   able? Since the decision in the *Tong Case,* the statutes under which it was decided have been repealed and new provisions enacted, and, in order to determine the effect of the decision in that case upon the questions before us, it will be necessary to compare and analyze the two enactments.

Prior to 1921 the law for the taxation of net proceeds of mines was found: (1) In section 3 of Article XII of the Constitution of this state, which reads, in so far as it applies to this case: "The annual net proceeds of all mines and mining claims shall be taxed as provided by law"; and

(2) the provisions of sections 2500 and 2563 to 2571, both inclusive, of the Revised Codes of 1907. Chapter 237, Laws of 1921, carried into the Revised Codes of 1921 as sections 2088 to 2096, both inclusive, provides for the taxation of the net proceeds of mines, and repeals sections 2563 to 2571, above. We will endeavor to point out the changes made in the law by the Act of 1921, and determine whether those changes operate to reverse the rule laid down in *Tong* v. *Maher,* above.

Sections 2563 and 2564, Revised Codes of 1907, read as follows, and are identical with section 2089, Revised Codes of 1921, except as changes are noted by figures inserted in parentheses; the changes made being noted below under like figures:

Section 2563: "Every person, corporation or association engaged in mining upon any quartz vein or lode, or placer mining claim (1) containing gold, silver, copper, coal, lead or other valuable (2) mineral deposits, must between the first and tenth days of June in each year, make out a statement of the gross yield of the above named metals or minerals from each mine owned or worked by such person, corporation or association during the year preceding the first day of June, and the value thereof. Such statement (3) must be verified by the oath of such person or (4) the superintendent or managing agent of such corporation or association (5) who must deliver the same to the assessor of the county in which such mine or mines are situated."

Section 2564: (6) "The statement mentioned in the preceding section must contain a true and correct account of the actual expenditures of money and labor in and about extracting the ore or mineral from the mine and transporting the same to the mill or reduction works, and the reduction of the ore and the conversion of the same into money, or its equivalent, during the year."

Section 2089 above adds, without change in the wording of the law down to the figure (4), at (1) "or mining from

or upon any mine whatsoever''; (2) ''mineral ore''; (3) ''shall be in the form prescribed by the state board of equalization.'' From (4) to (5) the following is substituted for the statement there made: ''the manager, superintendent, agent, president or vice-president of such corporation, association or partnership.'' The balance of that section is stricken out, and the following substituted: ''and must be delivered to the state board of equalization on or before the tenth day of July.''

(6) Said section 2089 then, in lieu of the provisions of section 2564, continues: ''Such statement shall show the following: 1. The name and address of the owner or lessee of the mine. 2. The description and location of the mine. 3. The number of tons of ore or other mineral products or deposits extracted and treated or sold from the mine during the period covered. * * * 4. The amount and character of such ores, mineral products or deposits, and the yield of such ores, mineral products or deposits to such person, corporation, or association so engaged in mining. * * * 5. The gross yield or value in dollars and cents. 6. Actual cost of extracting same from mine. 7. Actual cost of transporting to place of reduction or sale. 8. Actual cost of reduction or sale. 9. Actual cost of marketing the product, and conversion of same into money. 10. Cost of construction, repairs and betterments of mines, and cost of repairs and replacements of reduction works. 11. The assessed valuation of reduction works for the calendar year next preceding the year within which such return is made.''

Section 2565, Revised Codes of 1907, provided for a deduction of the expenses of operation, as indicated in section 2564, from the gross yield, thus determining the ''net proceeds,'' and section 2566 provided for the entry and extension in the assessment-books of the data thus secured, the first of which was to be ''the name of the owner of the mine.''

Section 2568 gives to the assessor authority to assess net proceeds, in the absence of such statement, in the manner provided by law for the assessment of other property where no statement is furnished.

Section 2571 makes the tax a lien upon the mine or mining claim from which the ore is extracted.

Sections 2565 to 2568, Revised Codes of 1907, being repealed, section 2090, Revised Codes of 1921, now directs the state board of equalization to compute the net proceeds in dollars and cents by subtracting from the gross receipts certain items of cost and expense enumerated in the section, and section 2091 now requires the board to certify to the county clerk of the county in which a mine is situated the "valuation of the net proceeds of such mines and mining claims for the purposes of taxation," and requires the county clerk to immediately enter upon the assessment-roll, "1. The name and address of the owner or lessee of the mine.  2. The description and location of the mine.  3. The number of tons * * * extracted. * * * 4. The gross value. * * * 5. The net proceeds, in dollars and cents," *etc.*

Section 2092 now authorizes the state board to make an estimate on which an assessment may be based, on failure of the proper party to make the required statement, and section 2095 again makes the tax a lien upon the mine from which the product is extracted.

It will be noted from the foregoing analysis that, as the law existed at the time the *Tong Case* was decided, it entirely ignored the existence of leases on mines, and required the assessment of the net proceeds of each mine against the owner thereof, regardless of whether the owner was physically operating the mine or not; the first entry in the assessment-roll being, "The name of the owner of the mine."

Aside from transferring the matter of computation and assessment from the county assessor to the state board of

equalization, the only important changes made in the law are (a), whereas, prior to 1921, the "person, corporation or association" "engaged in mining" was required to make the statement on which net proceeds were computed, now the statement must be made by such person, corporation or association as is either engaged in mining "*or* mining from or upon any mine whatsoever," and (b), whereas then the law required that the statement show and there be entered on the assessment-roll only "the name of the owner of the mine," now each entry must show either "the name and address of the owner *or* lessee of the mine." Each of these provisions is in the alternative or · disjunctive. Therefore, under our present statutory provisions, when a mine is operated by a lessee, instead of that fact not appearing in the assessment made, as formerly, the name of the lessee only will be entered in the statement made and will alone appear on the assessment-roll, and there will be nothing therein to indicate the ownership of the mine.

It would seem, therefore, that the intention of the legislature in repealing the statutes under which the *Tong Case* was decided and enacting what are now sections 2088 to 2096, Revised Codes of 1921, was to change the rule there announced that net proceeds of the mine are assessable to the owner of the mine, regardless of whether the mine is operated by the owner or by a lessee, and to place the burden upon the true owner of the property against which the tax is to be levied, as required by section 2002 of the Revised Codes of 1921.

2. Defendant, however, asserts that "the plaintiff is ad-
[2]  mittedly the owner of the property in question." But is this a fact? Admittedly the plaintiff is the owner of the *mines* from which the coal was extracted, the sale of which, in turn, resulted in "net proceeds"; but the "property in question" is neither the mine nor the coal, but a sum of money in the hands of lessees, after the coal has been extracted, transported, marketed, and the proceeds "con-

verted into money'' and there has been deducted therefrom
the cost and expense of these transactions. The owner of
the mines from which the coal was extracted has no interest
in this sum whatever nor ownership over it; according to
the terms of the leases, even the bulk of the rental was paid
in advance, long prior to the making of the statement to the
state board. This sum is as much the property of the lessees
as is any other money acquired in any legitimate manner.

3. Some contention is made by the parties as to whether
the sum paid by the lessees to plaintiff should be considered
as rent or royalty, but it is immaterial which it may be, if
a part of the "net proceeds."

4. What constitutes "net proceeds" was not involved in
the *Tong Case*, as it was there admitted, and the lease in
question provided that the rent or royalty paid was "twenty-
five per cent of the net proceeds" of the mine.

While divers definitions have been given of this term, our
statutes, heretofore quoted, set at rest what are "net pro-
ceeds" of a mine, in this state, for the purposes of taxa-
tion. It is the sum in dollars and cents, remaining after
deducting from "the gross yield in dollars and cents" "all
moneys expended for necessary labor, machinery and sup-
plies needed and used in the mining operations and develop-
ments; for improvements, repairs and betterments necessary
in and about the working of the mine * * * for trans-
porting . * * * and for marketing the product and the
conversion of the same into money.'' (Section 2090.) The
section contains other allowable deductions, not applicable
to coal mines or to lessees.

There is nothing in the statute permitting a deduction of
the amount paid as rental or royalty for the use and occupa-
tion of the mine or the right to extract coal therefrom, and,
as it appears from the pleadings that in the year 1922 the
lessees extracted more than the minimum quantity required
in the leases and disposed thereof at a profit, the amount

so paid was necessarily a part of the "net proceeds" of the mine for the fiscal year named.

As stated in *Anaconda Copper Min. Co. v. Junod,* 71 Mont. 132, 227 Pac. 1001: "It was no doubt the intention of the legislature to prescribe a definite and fixed method for arriving at net proceeds of mines. This it has done (sections 2088 to 2096, Rev. Codes 1921) by adopting the actual cost basis for deductions. And, were we to place any other construction upon the statutes, the same would be indefinite and uncertain, and in fact there would exist an open field for deductions which in our opinion was never intended."

And again: "It was the aim and intention of the legislature to fix some definite and uniform basis for the determination of net proceeds of mines for taxation purposes. This it has done by authorizing deductions of only actual costs. It was not its intention to permit deduction of every conceivable item of expense. It disclosed this intention by enacting the statutes, *supra.*"

If a lessee is permitted to deduct the amount paid in rent to the owner of the mine, then an owner operating the mine personally should be allowed to deduct the corresponding shrinkage in net proceeds in the form of interest on capital invested in the mine, and would, undoubtedly, find many other items of cost and expense which might logically be deducted from the gross proceeds (but not numerated in the statute), and thus reduce or eliminate the net proceeds of the mine.

As the legislature has specifically enumerated the deductions which may be made, and this court has declared that in so doing it acted within its constitutional powers (*Anaconda Copper Min. Co. v. Junod,* above), the state board exceeded its authority in deducting the rental or royalty paid by the lessees to plaintiff "as items of cost in the excavation and mining of coal"; under the statutes quoted the

amount so paid should have been included in the assessment of net proceeds to the lessees.

5. As the total net proceeds of the mine was the property [3] of the lessees and assessable to those companies, it is clear that the assessment of a portion thereof to the plaintiff was erroneous.

The statute clearly contemplates but one assessment; to one person, corporation or association, and that to the one either "engaged in mining" *or* "mining from or upon any mine whatsoever," and before the assessment is made it must be determined whether that one is the "owner or lessee." The assessment and levy cannot be divided and a portion assessed to each, nor can a tax be lawfully levied against a person for property which he does not own. (*Western Ranches* v. *Custer County*, 28 Mont. 278, 72 Pac. 659.) Under the present provisions of the law on this subject the lessee and not the owner of a mine is the "person, corporation, or association * * * mining from and upon" the mine in question, and therefore the amount received by plaintiff as rent or royalty is not "net proceeds" of mining operations conducted by plaintiff, and cannot be assessed to plaintiff on the basis of "net proceeds" of the mines.

Judgment affirmed.

*Affirmed.*

Associate Justices Holloway, Galen and Stark concur.

Mr. Chief Justice Callaway, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.