THE GOLDFIELD CONSOLIDATED MINES COM-
PANY, a Corporation, Et Al., Appellants, *v.*
THE STATE OF NEVADA and COUNTY OF
ESMERALDA, Respondents.

No. 3304

October 28, 1940.                              106 P.(2d) 613.

*Thatcher & Woodburn* and *M. A. Diskin,* for Appellants.

*Peter Breen, District Attorney, Gray Mashburn,* Attorney-General, and *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, for Respondents.

## OPINION

By the Court, Orr, J.:

Respondents recovered a judgment in the lower court for the sum of $2,936.51 alleged to be due for bullion

taxes for the year 1937. The case was submitted to the court on the following agreed statement of facts:

"That on September 1, 1934, the Goldfield Consolidated Mines Company, a corporation, executed a lease and option to One John W. Mercer, under the terms of which said Mercer was given the possession of the mining claims named as defendants herein, with the right to work the said claims and to purchase them during the life of the option.

"That prior to January 1, 1937, said Mercer assigned said lease and option and delivered possession of the said mining claims to the Eastern Exploration Company.

"That the Eastern Exploration Company executed subleases to divers persons covering parts of said mining claims designated as defendants, and retained for its own operation a portion of said property.

"That during all of the year of 1937, the Eastern Exploration Company and its sublessees were in complete and exclusive possession, control and operation of said premises and mined and produced gold and other valuable minerals from said mining property.

"That from and out of the gold and other minerals produced by the said Eastern Exploration Company and its sublessees from mining operations on those mining claims designated as defendants, during the year 1937, the sum of $85,116.12 was paid to the Goldfield Consolidated Mines Company by the Eastern Exploration Company as royalty.

"That the lease and option executed in favor of said Mercer and thereafter assigned to the Eastern Exploration Company, contained the following clause or covenant:

" '(j) To pay royalties to the Company on all ores, metal and mineral products shipped by Mercer under the terms of this agreement, in amounts according to the following schedules:

" 'Ten per centum (10%) in the case of ore a grade of Twenty Dollars ($20.00) per ton or less;

" 'Fifteen per centum (15%) in the case of ore of a

grade of from Twenty Dollars ($20.00) to Forty Dollars ($40.00) per ton;

" 'Twenty per centum (20%) in the case of ore of a grade of from Forty Dollars ($40.00) to Eighty Dollars ($80.00) per ton;

" 'Thirty per centum (30%) in the case of ore of a grade from Eighty Dollars ($80.00) to One Hundred Forty Dollars ($140.00) per ton;

" 'Forty per centum (40%) in the case of ore of a grade of over One Hundred Forty Dollars ($140.00) per ton.

" 'In the case of shipments of ores, the rate of royalty shall be determined from the settlement sheet covering each shipment and distributed as provided herein. In the case of ores treated by Mercer, the rate of royalty shall be determined by dividing the total amount of the return from product by the tonnage of ore treated each month from which the returns are derived.

" 'All such royalty payments from ores from the optioned premises, except for the area reserved in Par. I, hereof shall be applied to the next maturing installment of purchase price herein provided.'

"That for the six months' period ending June 30, 1937, the Eastern Exploration Company filed its statement with the Nevada Tax Commission showing a gross yield from its operations in the sum of $220,613.17 and a net proceeds of $29,723.88 for said period. Included in the deductions of cost allowed by Sec. 6580 N. C. L., as amended Statutes of 1937, Chapter 68, Page 139, was the sum of $58,502.78 representing royalty payments made by the Eastern Exploration Company to the Goldfield Consolidated Mines Company.

"That thereafter the Nevada Tax Commission issued its certificate to the County Assessor of Esmeralda County, determining that $29,723.88 was the net proceeds of said operation for said six months' period, and a tax in the sum of $1,025.47 became due and was paid by the Eastern Exploration Company.

"That a similar statement was made by the Eastern

Exploration Company for and on behalf of its sublessees for the six months' period ending June 30, 1937, showing a gross yield of $40,921.65 and after subtracting therefrom the lawful deductions, the net proceeds of said operation was the sum of $19,973.24. Included in the deductions made in determining the net proceeds was the sum of $11,460.89, representing royalty payments made by the lessees to the Goldfield Consolidated Mines Company.

"Thereafter the Nevada Tax Commission issued its certificate to the Assessor of Esmeralda County determining that $19,973.24 was the net proceeds of said operation for said period, and a tax in the sum of $689.08 became due and was paid to the County Treasurer of Esmeralda County.

"That on October 8, 1937, the Nevada Tax Commission gave. written notice to defendant that for the biannual ending June 30, 1937, it had assessed defendant for royalties received and paid to it from the Eastern Exploration Company, in the sum of $58,502.78 and for royalties received from the sub-lessees, in the sum of $11,460.89, or a total assessment of $69,963.67 and that the tax due by reason thereof was the sum of $2,413.75. The action of the Tax Commission was protested by defendant, which protest was denied and overruled.

"That similar statements were filed by the Eastern Exploration Company for the period ending December 31, 1937. The statement showing a gross yield of $144,-494.67. After deduction of costs as provided by law were made, there were no net proceeds. The Nevada Tax Commission accepted the statement as true and made no assessment against the Eastern Exploration Company. Included in the deductions of cost, was the sum of $15,322.43 paid to defendant representing royalty payments made by the Eastern Exploration Company.

"That the Eastern Exploration Company also submitted statements for this period on behalf of its sublessees showing a gross yield of $2,447.74, and no net

proceeds. Included in the costs deducted was the sum of $134.21 representing royalty payments.

"That on February 25, 1938, the Nevada Tax Commissioner gave written notice that it had assessed the Goldfield Consolidated Mines Company, appellants herein, for the royalties received from the Eastern Exploration Company and other lessees in the sum of $15,152.45, and that the tax due by reason thereof was $522.76 for the six months' period ending December 31, 1937.

"It was further stipulated that the total sum of $85,-116.12, representing the amount upon which a tax of $2,936.51 is claimed to be due, and for which plaintiff recovered judgment in the lower court, represents royalty payments paid to the appellants by the Eastern Exploration Company, pursuant to its lease and option for operations conducted during the year, 1937."

Section 1 of article X of the constitution of the State of Nevada, as amended, provides in part: "The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, when not patented, the proceeds alone of which shall be assessed and taxed."

■ Under the decision of Wren v. Dixon, 40 Nev. 170, 161 P. 722, 167 P. 324, Ann. Cas. 1918D, 1064, the above provision of the constitution, insofar as it provides for the taxation of the proceeds of mines, is not self-executing. Therefore it became necessary for the legislature to enact legislation carrying the provisions of the constitution into effect. This legislation is now found in sections 6578 to 6591, inclusive, N. C. L. 1929, and amendments thereof, namely; amendment of section 3, subsection 10, of section 6580, Stats. 1937, c. 68, p. 139, and the further amendment of section 3, subsection 10, of section 6580, Statutes 1939, c. 174, p. 256.

Section 6578 N. C. L. provides: "The Nevada tax commission is hereby empowered and authorized to

investigate and determine the *net proceeds* of all operating mines and to assess the same as in this act provided."

Particular attention is here called to the fact it is *net proceeds* which the commission is authorized to tax.

Section 6579 requires every person, corporation or association operating any mine, etc., to make and file with the Nevada tax commission a statement showing the gross yield and claimed net proceeds from each mine owned, worked or operated by such person, corporation or association.

Section 6580, as amended in 1937, provides: "The Nevada tax commission shall from said statement and from all obtainable data, evidence, and reports, compute in dollars and cents the gross yield and net proceeds of each mine for each semiannual period. The net proceeds shall be ascertained and determined by subtracting from the gross yield the following deductions for costs incurred during such six-months period, and none other: * * *."

Then follows an enumeration of the authorized deductions, among which is the amount paid by a lessee or sublessee as royalty.

■ So we see the procedure authorized by the statute to be: first, the commission to satisfy itself as to the gross yield, either by relying on the statements submitted by the operator, or upon independent investigation, or both. Having ascertained the gross yield, it then makes the ten authorized deductions. The remaining amount is net proceeds. After having ascertained the net proceeds as above set forth, the commission, under section 6581 N. C. L. is directed to prepare a certificate of the amount of net proceeds, in triplicate, file one copy with the secretary of the commission, one copy with the county assessor, and send the third copy to the person, corporation or association the owner of the mine. Upon the filing of the copies, the statute provides that the assessment shall be deemed to be made on the

amount fixed by the certificate of the Nevada tax commission. So, in following the sequences set out by the statute, we find the net proceeds do not include the amount paid for royalty, having been expressly excluded by statutory mandate.

It has been asserted in this case that the statute, in saying that the royalties paid by a lessee or sublessee shall be and constitute a deductible operating expense of such lessee or sublessee, and shall not be taxable against such lessee or sublessee, does not say that the royalty shall not be taxed. It does say, without question, that it shall not be taxed as net proceeds. The deduction of the royalty as an operating expense has the same force and effect and is placed on the same footing in the statute as amounts expended pursuant to the nine other items of deductible expenses authorized therein. Certainly no one will contend that after deductions have been made under the nine other authorized expenditures before ascertaining the net proceeds, the commission would have a right to place a tax on the money paid to the person, persons, firms or corporations to whom such money was paid.

Net proceeds can be assessed wherever they shall accrue, be it from operations of the original lessee or sublessees, and as many certificates issued as may be necessary on the different operations; but, we repeat, the assessment must relate to net proceeds. Having made one assessment against the net proceeds produced by owner, lessee, sublessee or anyone else, there is no authority for the commission to reach out and assess property specifically excluded in the determination of what shall constitute net proceeds, and attempt to assess the excluded property under the guise that it should be a portion of the net proceeds. Such action would be based solely upon the conclusion of the commission, and without statutory sanction. Such is the force and effect of appellants' argument, as we see it, that there can be but one assessment and the issuance of one certificate.

By one assessment is meant that when an assessment has been levied against the predetermined net proceeds, the operation, under authority of the statute, is concluded.

■ Respondents call attention to the constitutional requirement that the entire proceeds of the mine shall be assessed and taxed. But we do not understand them to seriously contend that there is any legal method of assessing the gross output. The legislature has placed a limitation on the amount of gross yield that can be taxed, and designated that amount net proceeds. Again, respondents call attention to section 2 of article VIII of the constitution, which reads: "All real property and possessory rights to the same, as well as personal property in this state, belonging to corporations now existing or hereafter created, shall be subject to taxation the same as property of individuals; provided, that the property of corporations formed for municipal, charitable, religious, or educationl purposes may be exempted by law." And assert that should the contention of appellants be upheld, then under subdivision 6 of section 6544 N. C. L., the royalties would be property escaping just taxation. Further, they call attention to the fact that taxation is the rule and tax exemption is the exception. Our holding is that royalties are not taxable as net proceeds. If the money paid as royalties is property escaping taxation, it would of necessity be required to be assessed on some other theory, with which we are not concerned here. There is a specific, definite statute exempting royalties from being taxed as net proceeds, but in this case the tax commission assumed to tax them on that basis. Merely because there may be property escaping taxation does not authorize the commission to tax that property in a manner not authorized by law.

The legislature, in its enactment of 1939, seems to have recognized the fact that by its enactment of 1937, it set out from net proceeds of mines certain amounts paid as royalties, which had theretofore been taxed as

net proceeds, and that in excluding such royalties from the net proceeds it made no provision for·taxes on such royalties; and, doubtless being desirous of again bringing the royalties under the sphere of taxable property, enacted the amendment of 1939. Such construction should be given the legislative declaration of 1939. American Laundry Co. v. Union Trust Co., 153 Misc. 55, 274 N. Y. S. 898; Drainage District v. Hetlage, 231 Mo. App. 355, 102 S. W. (2d) 702; Felin v. Kyle, D. C., 22 F. Supp. 556; Mackay v. Commissioner, 2 Cir., 94 F. (2d) 558, at page 561; Royal Mineral Association v. Lord, D. C., 13 F. (2d) 227.

The case of Northern Pacific Railway Co. v. Musselshell County, 74 Mont. 81, 238 P. 872, is more nearly in point with the instant case than any other we have considered. The history of legislation in Montana taxing net proceeds of mines is similar to that of Nevada, and the case of Northern Pacific Railway Co. v. Musselshell County, supra, lays down the rule that net proceeds are the property of the lessee, being represented by a sum of money in the hands of the lessee, after deducting therefrom costs and expenses allowed by law; that there can be but one assessment of net proceeds; and the amount reserved by the lessor as royalty is not net proceeds of mining operations, and cannot be assessed to the lessor on the basis of net proceeds of mines.

Respondents cite Tong v. Maher, 45 Mont. 142, 122 P. 279. This case can be distinguished from the instant case because the royalties were paid out of the net proceeds. It is the fact that the royalties paid in the instant case were not a part of the net proceeds that exempted them from bullion tax payment.

Homestake Exploration Corp. v. Schoregge, 81 Mont. 604, 264 P. 388, also turned upon the question of whether royalties paid were a part of the net proceeds.

At the time of the decision in the case of Byrne v. Fulton Oil Co., 85 Mont. 329, 278 P. 514, the Montana

statute expressly provided for the taxation of royalties, presenting a similar situation to that created by the enactment of the 1939 amendment of our statute; hence that case is of no assistance here.

Judgment and order appealed from are reversed.

ON PETITION FOR REHEARING
December 16, 1940.

*Per Curiam:*
Rehearing denied.