## Girard Trust Company, Trustee, etc., v. Union Township School District et al.

*Thomas Stokes* and *George A. Kershner,* for plaintiff.

*R. G. Bushong* and *Henry M. Koch,* for School District of Union Township.

SHANAMAN, J., May 31, 1949.—The pleadings are: (1) Plaintiff's bill in equity averring unconstitutionality of defendant's tax resolution and that its property is confiscated thereby, and praying that enforcement of the resolution be enjoined; and (2) an answer by the school district denying illegality of its ordinance, or confiscation thereby of plaintiff's property. Defendant John T. Dyer Quarry Company did not answer.

The issues are: (1) The constitutionality or unconstitutionality of the resolution, and (2) whether its effect is confiscatory upon plaintiff's property.

### Findings of Fact

1. Plaintiff, a corporation of the Commonwealth of Pennsylvania, with its principal office in the City of Philadelphia, is trustee under the will of A. Louise C. Brooke, deceased, who died September 5, 1935, a resident of Birdsboro, Berks County, Pa. Plaintiff has no office or place of business in Union Township and conducts no business there, and none of the beneficiaries under the will of A. Louise C. Brooke are residents of Union Township. As trustee plaintiff is the owner of a tract of land of about 722 acres in Union Township, Berks County, Pa., of which about 364 acres are used as a stone quarry. This tract of about 722 acres is assessed for taxation for the year 1948 at a valuation of $35,000, and the assessment has been increased to $50,000 for the year 1949.

2. The School District of Union Township is a school district of the fourth class, the territorial boundaries of which are coterminous with the boundaries of Union Township, and is a political subdivision and body corporate of the Commonwealth of Pennsylvania. James Kerr was president of the board of school directors of the school district at the date of the filing of the bill in equity but has since died; Elmer Kochel is vice president; Charles D. Bradley is secretary; John W. Yocum is treasurer, and William F. Richards is a member of the board of school directors. William M. Kupp is tax collector of the school district. The John T. Dyer Quarry Company is a corporation of the Commonwealth of Pennsylvania, and is engaged in the quarrying of stone from the land of plaintiff under a lease.

3. Plaintiff, as lessor, on or about September 12, 1940, entered into a lease dated as of August 2, 1936, with the John T. Dyer Quarry Company as lessee. By this lease plaintiff leased to the Dyer Company the exclusive right of quarrying and carrying away stone from this tract of land of about 364 acres situate in Union Township, Berks County, Pa., for a period of 20 years from August 2, 1936, in consideration whereof the lessee agreed to pay to the lessor as rent the sum of five cents for each ton of stone quarried and shipped from the demised premises. This lease is presently in effect. The tract of land had previously been leased by decedent A. Louise C. Brooke to the John T. Dyer Quarry Company and operated as a quarry in her lifetime.

4. The School District of Union Township advertised notice of its intention to adopt a resolution at a meeting to be held May 8, 1948, imposing a tax of 2½ cents per ton on every ton of stone and rock quarried, severed or removed from the ground in Union Township, the tax to be put into effect as of July 1, 1948, and continue in effect until June 30, 1949. This resolution was

not passed. Plaintiff is advised that at the meeting defendant John T. Dyer Quarry Company objected to such proposed tax.

5. Thereafter, on June 12, 1948, the School District of Union Township, after advertisement of notice of its intention to adopt the same, acting through its board of directors, adopted a resolution (herein referred to as resolution no. 1) imposing in effect a tax of one and one-quarter cents per ton upon all stone or rock quarried, severed and removed from the ground in Union Township, and sold and delivered on or after July 1, 1948, and until and including June 30, 1949.

6. Also on June 12, 1948, the school district, after advertisement of notice of its intention to adopt the same, acting through its board of directors, adopted another resolution (herein referred to as resolution no. 2) imposing in effect a tax of one and one-quarter cents per ton on the lessor or lessors or owner or owners of all leasehold, royalty and depletion agreements for the removal of all rock quarried, severed and removed from the ground in Union Township and sold and delivered on or after July 1, 1948, and until and including June 30, 1949.

7. Both resolutions so imposing or intending to impose these taxes were expressly so adopted under the authority of the Act of June 25, 1947, P. L. 1145.

8. Pursuant to resolution no. 2, imposing a tax on the lessor or owner of leaseholds, William H. Kupp, the Tax Collector of Union Township School District, has notified plaintiff in care of the John T. Dyer Quarry Company that a tax of $512.06, at the rate of 1¼ cents per ton on 40,965 tons of stone sold and shipped by the Dyer company during the month of July 1948, is due the school district, and the amount has been deducted by the Dyer company from the rent and royalty due plaintiff for the month of July 1948. Since then month-

ly taxes have been deducted as follows: August $874.66; September $926.78, and October $1,126.23.

9. Plaintiff, as owner and lessor of the lease with the Dyer company for the removal of stone quarried from the ground in Union Township, has been subjected to the provisions of resolution no. 2 and the tax sought to be imposed thereby. The tax will take 25 percent of the rents and royalties which constitute the only income received by plaintiff from the land.

10. Plaintiff is the only person adversely affected and aggrieved by the imposition of the tax under resolution no. 2, and is not a taxpayer representing 25 percent or more of the total valuation of real estate in the school district.

11. Union Township is predominantly agricultural; its industries consist of a small gray iron foundry, a small brass foundry, a small lumber yard, 12 small stores, no places of amusement, and the quarry owned by plaintiff and operated by the John T. Dyer Quarry Company. The total valuation of taxable property in the township is $667,525 for the year 1948 and $954,-975 for the year 1949, and the present school tax on the taxable property is 25 mills.

### Discussion

Defendant School District of Union Township has by resolution adopted June 12, 1948, imposed a tax upon Girard Trust Company, trustee, plaintiff, and has collected such tax or a part of it from defendant, John T. Dyer Quarry Company, through amounts deducted and withheld by the John T. Dyer Quarry Company, hereafter sometimes referred to as Dyer company and as quarry company, from any royalties owed by it to plaintiff. The method of collection is laid down by the terms of the resolution imposing the tax. If the resolution, known in this case as resolution no. 2, is legally ineffective against plaintiff, the tax is illegal, since no other basis for it than resolution no. 2 is suggested.

Resolution no. 2 by its title imposes a tax "on all leasehold, royalty and depletion agreements of one and one-quarter cents ($.01¼) per ton for all stone or rock quarried, severed and removed from the ground of Union Township under said agreements." Section 1 of the same resolution provides "that a tax of one and one-quarter cents ($.01¼) per ton is hereby imposed on the Lessor or Lessors or Owner or Owners of all Leasehold, Royalty and Depletion Agreements for the removal of all stone or rock quarried, severed and removed from the ground in Union Township. . . . shall be assessed when the said stone or rock is sold." Other sections furnish details of the method whereby the amount of the tax should be appraised and collected. We do not embrace plaintiff's contention that the tax is a tax on real estate. The intent to tax royalty agreements for the quarrying of stone. is clearly stated in the title, and section 1 is couched in language appropriate to levy such a tax upon the owners of such agreements. The subsequent language of the resolution, while effective to prevent any liability until and unless certain transactions take place, to wit, the quarrying, removal, sale and delivery of the stone, must in view of the preceding language be taken not as a contradictory description of the subject of taxation, but as a statement of the method of ascertaining and collecting the amount due. Thus, in Blauner's, Inc., et al. v. Philadelphia et al., 330 Pa. 340, 346, the court said:

". . . the State tax is a levy imposed for the privilege of conducting a particular kind of business, albeit the amount of the tax is measured by gross sales."

The parties have stipulated that the authority for the legislation is the Act of June 25, 1947, P. L. 1145, by the terms of which a school district such as defendant may tax "persons, transactions, occupations, privileges, subjects and personal property within the

limits of such political subdivision." The situs of intangible personal property for taxation is the domicile or residence of the owner. "For years the doctrine has been sustained by the courts of this State that the situs of intangible personal property for taxation, such as bonds, mortgages and other evidences of indebtedness, is the domicile of the owner": Commonwealth v. Curtis Publishing Co., 237 Pa. 333, 335, quoted with approval in Commonwealth v. The Mundy Corp., 346 Pa. 482, 484. The promises made to plaintiff by John T. Dyer Quarry Company and the right to enforce them, are intangible personal property which the law presumes, until the contrary be shown, to be located at the owner's place of residence or domicile. Girard Trust Company is a nonresident of Union Township, Berks County. It conducts no business in Union Township nor has it an office there. All the beneficiaries for whom plaintiff is trustee in this matter are nonresidents of Union Township. The Girard Trust Company is located in Philadelphia, Pa.

"In accordance with general rules, ordinarily the situs of intangible personal property of a corporation, for purposes of taxation, is at its legal residence or domicile, at its principal or main office, or at its principal place of business, and not elsewhere, in the absence of a showing of a different situs": 61 C. J. 654. As the Supreme Court said in Borough of Carlisle v. Marshall, 36 Pa. 397, 402:

"The inhabitants have an interest in the municipal government, and are lawfully taxed to support it, but these taxes should be paid out of their own property, not out of property existing in Philadelphia, and owned by inhabitants of New York."

Since the situs of plaintiff's rights in its contract is outside the territorial limits of Union Township, and therefore outside of those of the School District of Union Township, the tax on plaintiff cannot be sus-

tained as a tax on plaintiff's chose in action or right to receive royalties under its contract with John T. Dyer Quarry Company: Commonwealth v. Stewart, 338 Pa. 9, 18.

Defendant school district contends that despite the clear language of the title and of section 1 of the resolution, it should be construed to be an excise tax or a license tax upon the occupation or privilege of conducting a quarry business. The tax, it is contended "is imposed upon the privilege it exercises in the township of Union of engaging as an inactive party in the joint venture with the Dyer Company of quarrying and shipping stone. . . . The tax is not a property tax but a tax on a privilege." We are of opinion that this contention cannot be sustained. In People's Natural Gas Company v. Pittsburgh, 317 Pa. 1, 5, the court said:

"The phraseology of the ordinance makes it impossible to accept the city's contention that the purpose was to tax a privilege; both the title and the enacting parts of the ordinance deny it."

See also Commonwealth v. Pure Oil Company et al., 303 Pa. 112. In the case of Lawrence Township School District Tax Case, 362 Pa. 377, the court said:

" 'The Resolution is not well drawn, if intended as a tax on the transaction of mining and removing coal, as contended by counsel for the School District. Nowhere in the resolution does it state that it is a tax levied for the privilege of mining and removing coal, or for the privilege of selling the same. *The Resolution on its face purports to be a tax of five cents per net ton on all coal mined.'* . . . Where the words of a law are free from ambiguity, the letter of it may not be disregarded by the courts under a pretext of pursuing what may appear to be its spirit."

The fact that the tax does not accrue until a series of acts has been performed—the quarrying, remov-

ing, selling and delivery of rock—and the further fact that these acts virtually describe the quarry business, might, it is true, lead to the conclusion that the tax is in fact a mercantile license tax or occupation excise, were it not for the clear statement in title and in section 1 that the tax is imposed on royalty agreements. The succeeding sections merely set up the method of appraisal and collection. In fact, if the body of the resolution must bear the construction contended for by defendant, it clearly departs from the expressed intent of the title. See Com. v. Pure Oil Co., 303 Pa. 112, 115, 116.

But if the resolution is in fact an effort to tax the privilege of doing a quarry business, the resolution then, though in that respect within the powers conferred by the Act of 1947, Lawrence Township School District Tax Case, supra, is impotent to support the tax on this plaintiff for another reason, namely because this plaintiff is not engaged in the quarry business and does not quarry stone. The lessee and not the owner of a mine leased upon royalties is the "person, corporation or association mining from and upon" the mine: Northern Pac. Ry Co. v. Musselshell County, 74 Mont. 81, 238 Pac. 872, 875. If resolution no. 2 is supposed valid as a tax on a privilege of doing a certain type of business—quarrying stone for sale—the question remains: Does plaintiff exercise within the area of Union Township the business of quarrying stone for sale? Pa. Co. for Insurance, etc., v. Philadelphia et al., 346 Pa. 406.

"It is therefore important to determine in the case of any property producing income to a trust estate whether the trustee, through agents or servants, is actively managing and supervising the operation of the property. The ordinance defined 'business' as an '*enterprise*' or '*undertaking*' '*conducted* for profit or ordinarily *conducted* for profit.' These words signify

activity and participation on the part of the taxpayer": Id. 414, 415.

If plaintiff is merely receiving "unearned income from the passive ownership of property", id. 415, 416, such receipt of income would not put plaintiff into the business of quarrying for sale, unless the terms of the royalty agreement or the conduct of the parties show that plaintiff is so engaged within the township. The record contains no evidence of any activity of plaintiff in the business conducted by the quarry company defendant. The agreement with plaintiff under which Dyer company operates is likewise void of any provision from which such inference could be drawn. It uses language of a lease between the landlord and a tenant, the lessee agreeing to pay a minimum royalty of $10,000 a year, and to make payments at five cents per ton upon all stone shipped in excess of 200,000 tons per year. The agreement also contains various clauses suitable to the relation of landlord and tenant. One cannot conclude from the agreement that plaintiff is copartner or joint adventurer with the Dyer company. Counsel for defendant school district suggests that the agreement between plaintiff and Dyer company is not so much a lease of real estate as a license to enter, dig and remove material. If this be so it appears to make no difference. Under either supposition the indicia of partnership or of coprincipalship are wanting. Plaintiff reserves no right to profits as such, nor any right to ascertain the amount either of the gross or the net income of the operating company. Plaintiff reserves no right to control or participate in the operation of the quarry business at any of its stages. We are at a loss to suppose that plaintiff could be held liable for the debts or contracts of the Dyer company. We find no evidence that plaintiff exercises any active or even passive function in the operation or superintendence of the quarry company. It may, it is true,

check the accuracy of royalty payments by inspecting books and scales, but such right is only what, if it were not reserved in the agreement, plaintiff could accomplish by a bill in equity for an accounting. In a broad sense, of course, every property owner, who for money lets or bails his property to another, in order that the lessee or bailee may develop any special cne of the available uses of the property, is sharing in a joint enterprise, but certainly not within the ordinary meaning of the words, "occupation" or "conducting a business". Otherwise the owner of a professional office building might be held to be in business with his professional tenants, or a retired farmer might be held to be in business with his lessee farmer. We cannot suppose that the school board intended so extraordinary an extension of the meaning of doing business and then intended to support the assertion of such intent purely by a dubious implication in the teeth of their own clear statement of a contrary intent in the title and first section of the resolution. If indeed we were to declare such construction we would fall into judicial legislation, as the Supreme Court observed in the Lawrence Township School District Tax Case above cited. Whatever other measure of relief to defendant school district for its financial needs may yet lie open to it, it is clear that resolution no. 2 cannot in any view serve its purpose. Plaintiff is entitled to relief.

## Conclusions of Law

1. Resolution no. 2 of the School District of Union Township imposing a tax of one and one-quarter cents per ton on the lessor or lessors or owner or owners of all leasehold agreements for the removal of stone or rock quarried, severed or removed from the ground in Union Township is illegal and void as attempted to be enforced against this plaintiff.

2. The Act of June 25, 1947, P. L. 1145, authorizes the school districts therein specified by ordinance or resolution to levy, assess and collect or provide for the levying, assessment and collection of taxes on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions.

3. The Act of 1947 does not authorize a school district to impose taxes on the owners of intangible personal property outside the area of the school district.

4. The tax imposed by resolution no. 2 of the school district is imposed on a person not within the limits of the school district, namely, on the Girard Trust Company, trustee, which has no office in and does no business in Union Township, with respect to the ownership of intangible personal property which has no situs within the limits of the school district.

5. Query whether, although not necessary to our decision, resolution no. 2 violates section 1 of article IX of the Constitution of Pennsylvania because the tax is discriminatory in that it is not levied against resident recipients of royalties under royalty agreements concerning rock quarries outside of Union Township.

6. Resolution no. 2 does not impose a tax upon real estate as such, and therefore its want of uniformity if the resolution is viewed as imposing such a tax, does not rule the case.

7. Resolution no. 2 does not impose an excise tax upon the privilege of quarrying rock and stone for sale.

8. Plaintiff is not engaged in the occupation or business of quarrying stone and rock for sale in Union Township.

9. Resolution no. 2, if intended to be a tax upon such occupation, does not affect plaintiff, and plaintiff is not liable under it.

10. An injunction should issue enjoining and restraining defendants from enforcing or attempting to enforce resolution no. 2, passed and adopted on June 12, 1948, and from collecting and attempting to collect taxes thereunder against this plaintiff, and, in the case of defendant Dyer Quarry Company, enjoining that defendant from deducting the taxes from rentals or royalties due by it to plaintiff.

11. A decree should be entered directing defendant John T. Dyer Quarry Company to remit to plaintiff any sums retained by it on account of the tax, if in its possession, and if such sum or sums have been paid by John T. Dyer Quarry Company to the school district, then directing the school district to repay them to plaintiff. The School District of Union Township should pay the costs.

And now, to wit, May 31, 1949, the prothonotary is directed to enter a decree nisi in acordance with the foregoing decision, and forthwith to give notice thereof to the parties or their counsel of record. Sec. reg.

### Opinion sur Exceptions

Shanaman, J., February 6, 1950.—To the chancellor's findings of fact, conclusions of law, and decree nisi, defendant filed 13 exceptions. The sole point involved was whether defendant's tax resolution no. 2, more fully described and discussed in the opinion of the chancellor, is enforcible against plaintiff. The chancellor's findings of fact 1 and 3 are in accordance with the stipulation and the exceptions to them must be overruled. Defendant has now made an additional contention that title to the product is in plaintiff as real estate until severance, and after severance is in plaintiff's lessee or licensee as personal property; and that the tax may be upheld as imposed on a transaction within Union Township, to wit, the passage of title at the moment of severance.

"Certainly, therefore, every time the Dyer Company quarried stone there was a passing of title, and there was a transaction in Union Township", defendant avers. It is sufficient to state that not a word in the resolution or in its title suggests that the intention of the school board was to levy a transfer tax upon the transfer of title to property. "A short but conclusive answer to this contention is that the resolution does not say so, . . .": Jamison Coal and Coke Co. v. Unity Township School District, 362 Pa. 389, 392. We add that from none of the language nor from all of it together, can any reasonable inference be drawn that such was the intent.

Furthermore, we do not accept the theory of defendant that each particular quarrying of a quantity of rock was accompanied by a simultaneous transfer from the Girard Trust Company to Dyer Quarry Company of the title to such rock. The agreement between Girard Trust Company and Dyer Quarry Company was a sale of the rock and stone in place, and conveyed the title to those minerals. In Smith v. Glen Alden Coal Co., 347 Pa. 290, 299, the court said:

"After John B. Smith executed and delivered his 'lease' of this coal, to the Lehigh and Wilkes-Barre Coal Co. on November 11, 1897, he no longer owned any estate in *it*, though he still retained his estate in the *surface* and in *his right* to *surface support* . . . Smith's interest in the lease was property but it was *not* real property. He had parted with his coal and in lieu thereof he had the lessee's obligation to pay him the purchase money in royalty installments."

Similarly, in the present case, plaintiff had parted with its rock and stone by virtue of its royalty agreement, and was holding as compensation the lessee's obligation to pay the purchase price in royalties. In Sanderson v. City of Scranton, 105 Pa. 469, 473, the court said, in speaking of the tenant's rights:

"It is true, in general, that Jermyn covenanted to pay monthly for the coal, as it was mined, at the rate of twenty-five cents per ton, but he also agreed to pay monthly for a certain quantity whether it was mined or not, and the legal obligation to pay continued when all mining operations should cease. It cannot be said that Jermyn owned only the coal which he mined and paid for; it is true the payments were to be according to the yield of the mine, but the consideration of the contract depended upon the quantity of coal which the mine, upon measurement, might be found to contain, and that measurement was made as the mining progressed. The mere fact that the indenture contains a reservation of rent, with the right of distress, will not change its legal operation and effect."

The doctrine as determined in reference to leases of coal in place applies equally to a lease of rock or stone in place: Burke et ux. v. Kerr, 142 Pa. Superior Ct. 37, affirmed per curiam in Burke et ux. v. Kerr, 341 Pa. 304. The Superior Court said, at page 39: "From an examination of such facts and writings it is apparent that the principles of law applicable to the mining for coal should be applied here in construing the contract for the mining of limestone."

"Where a fair interpretation of the written agreement shows that a sale was intended by the parties and a right to mine and remove all the coal is conferred by it in express terms, or by plain and necessary implication, it will constitute a sale, notwithstanding a term is created within which the coal is to be taken out": Gilberton Fuels, Inc., v. P. & R. C. and I. Co., 342 Pa. 192, 200, quoting from Kingsley v. Coal & Iron Co., 144 Pa. 613, 628. Lazarus' Estate, 145 Pa. 1, 7-8, Finnegan v. Stineman, 5 Pa. Superior Ct. 124, 129-30 accord. Where lessee agrees to pay at least some royalty in a stated amount every year without regard to contingencies, the agreement "is not a mere

license to mine": Timlin v. Brown, 158 Pa. 606, 612-13. In Robinson et al. v. Pierce, 278 Pa. 372, 375, the words, "leased, demised and granted the right to mine and remove" were held to effect a sale of the coal in place. "Even had a limitation of the term appeared, it would not have been effective to change the character of the transaction, though to be considered in determining the intent of the parties": Id. 375, quoted in Sturdevant et al. v. Thomson, 280 Pa. 233, 236. The clauses of the agreement between plaintiff and Dyer Quarry Company present no important difference from those construed in many of the cases cited. It follows that title to the rock and stone passed to the Dyer Quarry Company at the execution and delivery of the royalty agreement between it and Girard Trust Company; that plaintiff's interest in the rock and stone thereafter was a right of personal property to receive royalties, and that the chancellor was correct in ruling that plaintiff as a nonresident of the school district was not liable to a tax imposed on plaintiff's intangible property. It follows also that each severance of a quantity of rock by Dyer Quarry Company merely changes the nature of the property in such rock and stone from real to personal, but does not pass the title which had already become vested in Dyer Quarry Company as a result of its lessee agreement. In conclusion we again note the fact that the parties stipulated for the record that plaintiff was not conducting business in Union Township.

And now, to wit, February 6, 1950, defendant's exceptions are dismissed. Counsel for plaintiff may prepare a proper decree.